(No. 31933.

THE PEOPLE ex rel. C. V. Marsters, County Collector, Appellee, *vs.* REV. SALETYNI MISSIONARIES, INC., Appellant.

*Opinion filed May 24, 1951.*

Jones, Sebat & Swanson, of Danville, for appellant.

William T. Henderson, State's Attorney, of Danville, (John T. Allen, and Carroll E. Snyder, of counsel,) for appellee.

Mr. Justice Crampton delivered the opinion of the court:

The appellant, the Rev. Saletyni Missionaries, Inc., filed objections in the county court of Vermilion County to the general taxes for the year 1945 levied against three parcels of improved realty belonging to it, claiming them to be exempt from taxation. The objections were overruled, and this appeal followed.

The facts are stipulated. The appellant under its articles, and in fact, is a corporation formed and existing solely: (1) To perform charitable and benevolent acts; (2) to establish, hold and maintain an institution of learning at Olivet for the instruction of students in the various branches of a thorough and liberal education, with authority to confer degrees and grant diplomas; (3) to conduct retreats; (4) to acquire, hold and control real and personal property for the purposes above specified; and to do and perform all matters and things necessary, incidental, or conducive to the accomplishment of any of the purposes set forth. The appellant conducts a seminary on certain parcels of real estate in Olivet, and all the buildings and improvements on the entire premises are intended to be used for the purposes of the seminary alone and no part of the premises, including the parcels in question herein, are leased or otherwise used with a view to profit.

The course of study maintained is equivalent to a high school and three years of college. The subjects include

English, philosophy, chemistry, biology, history, church history, scripture, public speaking and foreign languages. In addition, several hours a day are devoted to the moral training of the students, consisting principally of prayers and religious services. The school term extends from the middle of September to the middle of June, and the students are domiciled in dormitories but are not required to pay for their board, room, laundry or training. A very small percentage pay a token sum in the nature of tuition, but payment of tuition is not compulsory, and the majority of the students possess very limited financial means. During summer vacation the premises of the seminary are used by adults, principally of the Catholic faith (but not limited to any faith,) for retreats, wherein persons retire for three-day periods for the purpose of solitude, reflection and the forgetting of the chaos and worries of their businesses and of world affairs.

The seminary is supported and maintained from funds contributed by individuals, various Catholic parishes and by the LaSallette Fathers, moneys received from students being far from sufficient to sustain it. The priests and nuns who serve as instructors and administrators receive absolutely no compensation for their work, and are merely furnished lodging and food on the premises. Persons or organizations interested in the seminary do not receive any money from it.

Each of the three parcels involved is a part of the seminary grounds, being a contiguous portion thereof. Parcel 1 is a two-story frame house, and it was stipulated the second floor is used for sleeping quarters for visiting clergy, for which they pay no compensation while attending the seminary, either as visiting lecturers, inspectors, or guests. One of the rooms on that floor is permanently occupied by the Superior in charge of the seminary and who is a religious of the LaSallette Order. All he re-

ceives for duties performed is food, clothing and lodging—
no salary or other compensation. The first floor is devoted
to classrooms for students. Parcel 3 consists of a frame
building used as a convent for the nuns of the institution.
They prepare the food, act as administrators, and otherwise
assist in the maintenance and operation of the seminary.
They receive no pay or other remuneration, nor do they
pay for the use of this parcel; for it is furnished to them,
along with their food and clothing, for services rendered
by them. Parcel 5 is a frame cottage used to quarter
students, relatives, visitors and prospective students visiting
the seminary. Visitors and guests pay no remuneration for
use of the premises. The basement and a part of the rear
of the premises are used for the storage of school and
religious equipment, and maintenance supplies.

All three parcels are used as retreat houses. Accord-
ing to the ninth paragraph of the objections, the "retreats"
are religious assemblies, and this is not denied by appellee.
Persons so using them are not required, nor are they re-
quested, to make payment for that use. They do frequently
make voluntary contributions to the seminary, which are
used only for its support, and in some measure defray a
portion of the expenses of the seminary.

The stipulated facts reflect the allegations of fact em-
bodied in the objections. It is claimed each parcel is used
solely for religious, educational and charitable purposes
and is, therefore, exempt under section 19 of the Revenue
Act of 1939. (Ill. Rev. Stat. 1949, chap. 120, par. 500.)
The appellee admits each parcel is primarily used for the
claimed purposes, but claims such use is not exclusive and,
as a consequence, is not exempt from taxation.

The appellee argues that inasmuch as nearly one half
of parcel 1 is used for housing visitors for about nine
months of the year, the burden was on the appellant to
show how many, or what proportion, of those visitors are

guest lecturers, and it has not done so. The use of the parcel for the remainder of the year for retreats by persons not connected with the seminary, either from an educational or religious standpoint, is given as an additional reason for the nonexemption of the parcel. According to appellee, parcel 3, used for housing the nuns, stands on the same plane as the residence of an instructor in a parochial school conducted by a religious organization and is not exempt. Exemption cannot be allowed parcel 5, it is said, because the quartering of guests, visitors and students therein is a nonexclusive use, and the appellant has not carried the burden of showing that the use of the basement and an undisclosed proportion of the rear of the parcel for storage is the principal use, or is only incidental to the other use.

Here we find a corporation, authorized by the State to perform charitable and benevolent acts, to educate students, and to conduct retreats. All of that is to be done at one and the same place, and using the same real and personal equipment of the corporate seminary. Section 19 of the Revenue Act (Ill. Rev. Stat. 1949, chap. 120, par. 500,) provides: "All property described in this section to the extent herein limited, shall be exempt from taxation, that is to say: (1) * * *; all property of schools, including the real estate on which the schools are located and any other real estate used by such schools exclusively for school purposes, not leased by such schools or otherwise used with a view to profit; * * *. (2) All property used exclusively for religious purposes, or used exclusively for school and religious purposes * * * and not leased or otherwise used with a view to profit * * *. (7) All property of institutions of public charity, all property of beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit; * * *."

It is to be noted the claim for exemption is not based upon the last clause of paragraph (2) of the section giving exemption when the property is, "used exclusively for school and religious purposes." The reason for an exemption is the first clause of that paragraph which is invoked in respect to the "religious purposes." The right to a tax exemption is to be accorded to schools, charitable and religious organizations only when the property claimed to be exempt is exclusively used for either one of the three purposes. Obviously, the three categories stated in section 19, when distinct entities, cannot make simultaneous use of the same property for each purpose and claim such use to be exclusive to each for tax exemption under the section. Whether the appellant, being a single corporate entity utilizing its property exclusively for the three purposes, can, as a matter of law, rightfully base a claim for tax exemption on the three purposes we do not have to decide in order to reach a decision. The stipulated facts, when examined against the background of applicable decisions of this court, disclose appellant can, on those facts, lay claim to only one of three exemptions as constituting its primary purpose.

Tax exemption statutes must be strictly construed and all doubts resolved against an exemption. However, when the property is used for an exempt purpose, the ascertainment of whether that use is an exclusive one is not reached by a construction which is narrow beyond reason. The answer must be found in the facts of the case before us. Property is generally susceptible of more than one use at a given time and the exemption is determined upon the primary use, and not upon any secondary or incidental use. When the primary purpose is an exempt one, any incidental use of the exempt property for another purpose does not negative the exemption when the incidental use is not for profit. When the primary purpose to which the property is applied is for a public educational, char-

itable, religious or other exempt purpose, income obtained from a secondary or incidental use for nonexempt purposes will not, of itself, render the property nonexempt. *People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363.

The case of *School of Domestic Arts and Science* v. *Carr,* 322 Ill. 562, is applicable to the instant one because of a similarity of the controlling facts of each. The school claimed exemption of its property from taxation under section 19 as a school and also as a charitable organization. The school was a corporation not for pecuniary profit. All of the property of the school was exclusively used in the instruction of young women in the occupations of cooks, waitresses, seamstresses, milliners, housekeepers, and the domestic arts and sciences in many of its branches, coupled with the actual experience, under supervision, of running a home. Generally, it taught whatever pertained to the management of a private home and to the training of women in wage-earning employments connected with the feeding or clothing of a family or for the management of restaurants and institutions. No woman was ever turned away because she had no money to pay tuition or for food used in the practice of the art of cooking. Some paid as much tuition as their means would permit, some were taught free, and many paid only a nominal sum because of their meager means. A public restaurant was conducted by the school to provide an outlet for the food prepared and cooked by students, for the school could not have been successfully maintained had not those products of the students been sold. In a home maintained by the school a few of the students were roomed and boarded, some of them received their board free when they could not pay for it, while others resident therein paid what board they could afford. The income derived by the school from those mentioned sources, and all other sources, was ex-

clusively devoted to the expenses and operation thereof. Neither the school nor any of its officers derived any profit whatsoever from the operation of the school, the restaurant or the home. In fact, the school always ran an annual deficit which was met by the contributions of benevolent women.

In the reaching of a decision in the *Domestic Arts case*, this court quoted with approval the legal definition of a charity contained in *Crerar v. Williams,* 145 Ill. 625, *i.e.,* "A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burthens of government." In the *Domestic Arts case* this court, after citing previous decisions as a basis, said, "* * * so long as charity was dispensed to all those who needed and applied for it, and so long as no private gain or profit came to any person connected with the institution, and so long as it did not appear that any obstacle of any character was by the corporation placed in the way of those who might need charity of the kind dispensed by the institution, such institution was a charitable and beneficent organization." We also said: "The fundamental ground upon which all exemptions in favor of charitable institutions are based is the benefit conferred upon the public by them and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens." The facts pertaining to the character and operation of the school, when tested by the standards stated above, led this court to declare the school was a charitable organization on the basis of its primary purpose, the operation of the

restaurant being a primary and not a secondary use. The property of the school was held to be exempt under paragraph (7) of section 19.

The subjection of the stipulated facts of this case to the same test, and in accordance with the stated applicable rules therefor, leads only to the conclusion the appellant's primary purpose is the dispensing of charity through educational and religious channels. Hence, it is that type of charitable organization entitled to have its property exempt from taxation under paragraph (7) of section 19, provided that property is used essentially for the primary purpose of dispensing charity. The appellee cites only *St. John Congregation* v. *Board of Appeals*, 357 Ill. 69, and *People ex rel. Olmsted* v. *University of Illinois*, 328 Ill. 377. In the *St. John case* a religious organization conducted a parochial school, and it was claimed the organization-owned residence, being occupied rent-free by a teacher, was exempt from taxation. We held the residence was not exempt, for it was not used exclusively for religious purpose, or exclusively for school and religious purposes. It was admitted the use was similar to that of a parsonage. In *First Congregational Church* v. *Board of Review*, 254 Ill. 220, we held a parsonage to be primarily a home for the pastor and his family, hence not exempt. The housing of the Superior, the nuns, students, and the transient visitors having occasion to visit the seminary, is the direct application of the disputed parcels to the accomplishment of the primary purpose for which the seminary exists; hence the use of those parcels is a primary one. Exemption was denied in *People* v. *University of Illinois*, 328 Ill. 377, to farm land given by deed of trust to trustees of the University of Illinois. Exemption was claimed on the grounds the farm was property of the State, and was used for school purposes under the second clause of paragraph (2) of section 19 of the Revenue Act. We held the farm not to be State property because of the restrictive nature

of the deed of trust. The farm was not used for school and religious purposes, and the use must be for both purposes. This case is not applicable, due to the material difference between the controlling facts thereof and those of the one before us.

The judgment of the county court of Vermilion County is reversed and the cause remanded, with directions to sustain the objections.

*Reversed and remanded, with directions.*