Merrimack, }
July 1, 1952. }  No. 4116.

FRANCISCAN FATHERS *v.* PITTSFIELD.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*H. Thornton Lorimer* and *Francis E. Perkins* (*Mr. Lorimer* orally), for the defendant.

KENISON, C. J.   The pertinent part of Revised Laws, chapter 73, section 28, as amended by Laws 1945, chapter 141, section 2, reads as follows: "The exemptions referred to in sections 24, 26 and 27 of this chapter, as regards real estate hereafter acquired by such institutions, shall apply only to subsequent improvements therein and thereon, and the real estate so acquired shall be assessed and taxed as other similar land and real estate in the vicinity is assessed and taxed.   This section shall not apply to real estate owned by religious societies incorporated or organized within this state *and occupied by their pastors or clergy in active service . . . .*" (Emphasis supplied).   A clerical error in the 1945 amendment in referring to section 24 as section 23 was corrected by Laws 1951, chapter 8.   However, the defendant raises no question in this case concerning the application of the defective 1945 amendment on the taxation of plaintiff's property in 1950.

Prior to 1931 qualified religious societies organized within this state were entitled to an exemption of one hundred and fifty thousand dollars on property owned and occupied by them.   P. L., *c.* 60, *ss.* 22, 23, which is now R. L., *c.* 73, *ss.* 24, 25.   An amendment effective May 6, 1931 (Laws 1931, *c.* 148) provided that this institutional exemption should not apply to real estate thereafter acquired and should be limited to subsequent improvements made

by the taxpayer after its acquisition. The effect of this amendment was to make the acquisition value of religious property taxable and to delimit the expanding extent of tax exempt property. This appears as the first sentence in R. L., *c.* 73, *s.* 28, *supra.* Thereafter another amendment (Laws 1937, *c.* 175) provided that section 28 should not apply to the real estate owned by qualified religious societies and occupied by their pastors or clergy in active service. That amendment, quoted in the preceding paragraph now appears as the second sentence in section 28. The effect of the 1937 amendment was to restore what the 1931 amendment had taken away with the result that the institutional tax exemption was again available to such religious societies if their property was occupied by "clergy in active service." Changes in the law made by Laws 1945, chapter 141, and the technical correction of Laws 1951, chapter 8, do not affect the present case.

Whether the plaintiff's property is occupied by its clergy "in active service" is not free from doubt. In construing the phrase we do not adopt a liberal attitude because it is charity nor a hostile attitude because it seeks exemption from taxation. *Y. W. C. A.* v. *Portsmouth,* 89 N. H. 40, 42, 43. The legislative intention is sought without regard to rules requiring strict or liberal construction for certain classes of legislation. *Academy* v. *Exeter,* 90 N. H. 472, 504. The present legislative approach to the problem of exempting charities from taxation is handicapped by its previous inability to obtain accurate data on the nature and extent of such exemptions within the state. Laws 1947, *c.* 328; Laws 1949, *c.* 339; Laws 1951, *c.* 277.

It appears that the retreats conducted by the plaintiff are primarily devoted to religious instruction and prayer and that recreation and diversion are definitely subordinate to their primary purpose. Without adopting the tax policy and interpretation of other jurisdictions, it may be noted that retreats have been considered of a religious nature and entitled to tax exemption in other states. 1950 Annual Survey of American Law 195; *Serra Retreat* v. *Los Angeles County,* 35 Cal. (2d) 755. *Cf. People ex rel Marsters* v. *Missionaries,* 409 Ill. 370; *Woodstock* v. *The Retreat,* 125 Conn. 52; *Laymen's Week-End Retreat League of Philadelphia* v. *Butler,* 83 Pa. Super. 1.

The members of the plaintiff's order are admittedly clergymen within the meaning of the statute. *In re Swenson,* 183 Minn. 602. They are in no sense inactive or retired as was the case of the

clergymen in *Methodist Conference* v. *Sandown*, 87 N. H. 47. It is urged that they are not in active service because that implies a specific church or body of churches with a specific congregation. Since the retreatants who receive religious instructions have no official specific relationship with the order as a local church or parish, it is argued that Catholic clergy of the plaintiff are not in active service. While this is a possible construction of the statute, it reads more limitations into the legislation than its words warrant. The members of the plaintiff's order were not merely serving their own spiritual needs but in the conduct of the retreats were in active service for the retreatants. If the statute is to be restricted in the manner urged by the defendant, some phrase other than "active service" is required to accomplish that result. We conclude that members of the plaintiff's order occupy that portion of the premises that is tax exempt as clergymen in active service within the meaning of the last sentence of R. L., *c*. 73, *s*. 28.

All of the plaintiff's farm is not occupied by its members in active service within the meaning of the statute. The artificial pond of twenty-six acres is not so occupied within any practical, common sense meaning of the word even though it is used by its members to fish and such fish as are caught are consumed on the premises. A use which is slight and insignificant is not "an occupancy sufficient to warrant a conclusion of use for the Society's purposes, such as the statute requires." *Society of Cincinnati* v. *Exeter*, 92 N. H. 348, 357. The use of land for hunting, hiking and fishing is not the type of activity related to religious activities which the Legislature sought to exempt from taxation. Possession, ownership and use of land, which is part of a larger tract, must be more than negligible to give reasonable effect to the demand of the statute that it be occupied. *Academy* v. *Exeter*, 90 N. H. 472, 506. *Sisters of Mercy* v. *Hooksett*, 93 N. H. 301, 312; *Academy* v. *Exeter*, 92 N. H. 473, 476. Likewise the thirty acre tract north of the artificial pond is not occupied by the plaintiff's order within the statute. The clearing that has been done with the intention eventually to transform it into a hayfield does not constitute occupancy. *Society of Cincinnati* v. *Exeter*, *supra*, 351. Previous cases have noted that the distinction between taxable and nontaxable land "may be a narrow one, but the authority for it is sufficiently well established." *Academy* v. *Exeter*, 90 N. H. 472, 503.

The balance of plaintiff's land and buildings are sufficiently occupied by its clergy in active service to be tax exempt. The con-

tributions made by the retreatants did not defeat the plaintiff's eligibility to a tax exemption (*Y. W. C. A.* v. *Portsmouth,* 89 N. H. 40; *Portsmouth Historical Society* v. *Portsmouth,* 89 N. H. 283) and the general. occupancy of the members of the plaintiff's order was not destroyed by the presence of the retreatants. *Hedding &c. Association* v. *Epping,* 88 N. H. 321. The *Hedding* case (*p.* 324) clearly establishes the exemption of the caretaker's house: "The caretaker was an agent and not a tenant and his occupancy was that of the plaintiff." With the exception of the two tracts mentioned in the previous paragraph, the land and buildings were sufficiently occupied by the plaintiff to be exempt from taxation.

*Case discharged.*

All concurred.