[Civ. No. 10431.   Third Dist.   Feb. 13, 1963.]

SAINT GERMAIN FOUNDATION, Plaintiff and Respondent, v. COUNTY OF SISKIYOU, Defendant and Appellant.

912

Albert H. Newton, Jr., District Attorney, and Michael T. Hennessy, Deputy District Attorney, for Defendant and Appellant.

Tebbe & Correia, Mackay, McGregor & Bennion and Charles J. Higson for Plaintiff and Respondent.

SCHOTTKY, J.—The Saint Germain Foundation brought three actions to recover real property taxes paid under protest to Siskiyou County for the tax years 1953-1954, 1954-1955, and 1955-1956. The three actions were consolidated for trial and the trial court determined that certain of the properties were tax exempt and ordered that the county return to the foundation a portion of the taxes paid under protest. Siskiyou County has appealed.

The foundation is an Illinois corporation organized for educational and spiritual purposes. Its articles of incorporation assert that it is not organized for profit. It is qualified to operate in California. The foundation was founded in 1932 by Edna W. Ballard and her husband, G. W. Ballard, now deceased. It propagates the teachings of the "I Am" religion through the holding of classes for religious instruction and the maintenance and operation of reading rooms and sanctuaries. The principal use of the properties held to be tax exempt here is for the holding of conclaves and a pageant. The conclaves which are for training and instructional purposes are

not open to the public but the pageant may be attended by the public.

Appellant county contends that the properties declared by the trial court to be exempt from taxation are not exclusively used for religious purposes, and also contends that the use of said properties was to the financial benefit of the Saint Germain Press and Edna W. Ballard.

Respondent foundation contends that it is entitled to the exemptions under the applicable sections of our state Constitution and the Revenue Code.

Article XIII, section 1c, of the Constitution provides that the "Legislature may exempt from taxation all or any portion of property used exclusively for religious . . . purposes and owned by . . . foundations or corporations organized and operated for religious . . . purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Section 214 of the Revenue and Taxation Code provides for the purposes of this action: "Property used exclusively for religious . . . purposes owned and operated by . . . foundations or corporations organized and operated for religious . . . purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit;

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

"(3) The property is used for the actual operation of the exempt activity;

"(4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of the business or profession;

"(5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose;

"(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, founda-

tion or corporation organized and operated for religious, hospital, scientific, or charitable purposes; . . .''

The basic question to be determined by us is whether or not the foundation comes within the purview of the exemption statute.

The Saint Germain Press is a corporation organized for profit, and Edna W. Ballard is the sole stockholder of record. The press is the sole source where official literature pertaining to the ''I Am'' religion can be obtained. The press sells a great variety of literature and other religious paraphernalia. The press obtains its income from the sale of religious matter. The press during the period involved here paid on behalf of the foundation the expenses of putting on the annual pageant. This amounted to some $100,000 for the period involved.

Appellant argues that since the press admittedly was a profit corporation, and since all members of the sect had to buy their religious literature from the press, the holding of the conclaves was a benefit to the press. But the evidence shows that the press advanced funds to the foundation; that the benefits flowed from the press to the foundation; and that no net profit was made by the press. We do not believe that the fact that the press sold books at the pageant required a determination that the property was used for the advantageous pursuit of the press.

The sale of religious literature at the conclaves was to promote and foster the precepts of the foundation, and even though the press could benefit from such activities this would not prevent the foundation from being exempt from taxation. The sale of such religious literature, the pageant and the conclaves bear an intimate relationship to the proper functioning of the foundation. It is something the foundation itself could do without losing its tax exempt status. (Accord *Y.M.C.A.* v. *County of Los Angeles,* 35 Cal.2d 760 [221 P.2d 47].) The fact that the press might benefit does not require a finding that the activities were for the purpose of obtaining a material benefit for the press. The record is replete with evidence that the activities were for the purpose of fostering the activities of the foundation and that the press in fact obtained no benefit.

In its memorandum opinion the trial court stated: ''In determining the applicability of this tax exemption to plain-

tiff's various parcels of real property, we must answer in order the following questions:

"*1. Is plaintiff's purpose 'religious'?* Examination of plaintiff's literature and of the furniture of its sanctuaries suggests that plaintiff's adherents of the 'I Am' sect do meet for the purpose of worship, and that the objects of their worship include God and Christ. It appears, also, that these people hold in veneration certain beings or persons regarded as saints or messengers of grace. The secular State is not equipped to ascertain the truth or error of these theological beliefs, or to distinguish orthodoxy from heresy. Indeed, it is constitutionally prohibited from doing so.

" 'Religion simply includes (1) a belief, not necessarily referring to super-natural powers; (2) a cult, involving a gregarious association openly expressing the belief; (3) a system of moral practice directly resulting from an adherence to the belief; and (4) an organization within the cult designed to observe the tenets of belief. The content of the belief is of no moment.' (*Fellowship of Humanity* v. *County of Alameda,* 153 C.A.2d 673 [315 P.2d 394] at p. 693.)

"The evidence shows that plaintiff complies with the indicated tests, and that its purpose is therefore religious.

"*2. Is Plaintiff organized or operated for profit? Does any part of its net earnings inure to the benefits of any private shareholder or individual? Is its property irrevocably dedicated to religious purposes?* The corporate structure and powers of plaintiff as a non-profit corporation, organized under the law of the State of Illinois, and duly licensed to do business in the State of California, indicate that legal requirements in these respects have been met. (*House of Rest* v. *County of Los Angeles,* 151 C.A.2d 523 [312 P.2d 382].)

"*3. Notwithstanding plaintiff's character as a non-profit corporation, does any person or entity connected therewith in fact receive therefrom either profit, or inordinate compensation, or professional advantage?* Defendant has labored diligently, and with very limited cooperation from plaintiff, to show the facts of the financial connection between plaintiff Foundation, on the one hand, and plaintiff's foundress (Edna W. Ballard) and the St. Germain Press, Inc. (a commercial corporation whose sole stockholder is Edna W. Ballard) on the other. The effect of defendant's diligence, however, is to prove the exact converse of defendant's contentions. In fact, Mrs. Ballard and the Press have contrib-

uted money to the Foundation, rather than the Foundation contributing to them. In consequence, the Foundation is debtor both to the Press and to Mrs. Ballard. This relationship does not preclude tax exemption. . . .''

The court then proceeded to hold that a house which was rented to a tenant, some vacant land south of Shasta Springs, some cultivated garden and orchard land, and some bookstores at Shasta Springs operated by a concessionaire were taxable, and stated as to the remaining properties which it held to be exempt:

■  ''(e) Pantry (Snack Bar), gift shop and beauty shop at Shasta Springs: These facilities were operated by plaintiff, not primarily to make money, but primarily to serve the convenience of persons assembled for religious purposes at Shasta Springs. They are therefore distinguishable from a hospital thrift shop or rummage sale. (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 C.A.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045].) In that these facilities were not open to the general public, they are likewise distinguishable from the valet shops, barber shops and restaurants in YMCA buildings. (*Y.M.C.A.* v. *County of Los Angeles,* 35 C.2d 760 [221 P.2d 47].) These facilities appear more to resemble the barber shop for which exemption was allowed, and the coffee shop whose operation was by dictum held to be 'a reasonable incidental activity' in connection with an exempt purpose. (*St. Francis Memorial Hospital* v. *City & County of San Francisco,* 137 C.A.2d 321 [290 P.2d 275] at p. 328.) The space occupied by these facilities is therefore exempt.

■  ''(f) Dormitories, bedrooms, living rooms, dining rooms, kitchens and utility spaces for the use of plaintiff's adherents, youthful or mature, assembled in conclave for two weeks at Shasta Springs each year: It appears from the evidence that these people assemble for the purpose of religious instruction and worship. As such, their activities resemble those of a lay person making a retreat under Catholic auspices, an activity conceded to be tax exempt (*Serra Retreat* v. *County of Los Angeles,* 35 C.2d 755 [221 P.2d 59]). Likewise, their activities resemble those of Methodists holding an annual conference, for which tax exemption has likewise been conceded (34 Ops.Atty.Gen. 175). The factual situation indicated in that opinion seems very comparable to the facts of the present case. Finally, the activities of plaintiff's adherents appear much more specifically religious in character

than do those of the average inhabitant in a YMCA. If 'the dormitory accommodations furnished at the (YMCA'S) respective branches appear to be a reasonably necessary facility for carrying out plaintiff's general program, and to constitute a base of operations from which to radiate its commonly recognized influences and teachings directed to the elevation and betterment of young men and boys' and are therefore tax exempt (*Y.M.C.A.* v. *County of Los Angeles,* above, 767), then even more strongly do the residential facilities of plaintiff fall within the scope of the exemption.

"(g) Living, sleeping and eating facilities for caretakers or maintenance personnel at the Sanctuary at Mt. Shasta City, at the Amphitheatre and at Shasta Springs: It is now well established that residential quarters of persons required to reside in exempt premises for reasons of 'institutional necessity as contrasted with mere considerations of residential convenience' are exempt (*Sierra Retreat* v. *County of Los Angeles,* above at 759: Accord—*Cedars of Lebanon Hospital* v. *County of Los Angeles,* above; 34 Ops.Atty.Gen. 175, above.) These quarters are therefore also exempt, as the County Assessor has in part conceded.

"(h) Amphitheatre, its seating accommodations, stage, dressing rooms, parking lot, and storage rooms at the site and in Mt. Shasta: These facilities appear to be employed for the presentation of an annual dramatic reenactment of the life of Christ. Such dramatic performance contains elements of both religious instruction and religious worship, and is a traditionally accepted religious exercise, as witness medieval miracle plays and the Passion Play of Oberammergau. These facilities are therefore exempt, as the Assessor later conceded.

"(i) Sanctuaries or chapels, four in the Old Schoolhouse in Mt. Shasta, one at Shasta Springs: These rooms are clearly exempt, not only under Section 214, *supra,* but also under Revenue and Taxation Code, Section 206. Defendant does not argue otherside [*sic*]. There is also at Shasta Springs a room used at one time as a dining room during conclaves, and on occasion as a sanctuary. This is also exempt, for reasons above stated."

The record amply supports the trial court's statements as to the facts and the authorities support the court's conclusions as to the law. The trial court's conclusion that plaintiff foundation was a religious organization entitled to

exemption from taxation as such must be sustained, and whether or not the parcels of property found by the court to be exempt from taxation were entitled to such exemption was a question of fact for the trial court to determine. Appellant has made a vigorous argument as to the insufficiency of the evidence but its argument is merely one as to the weight of the evidence.

Appellant asserts that since this appeal is from a judgment rendered by a judge who did not hear any of the evidence but merely examined the transcript this court should not place as much weight upon the decision of the trial court as is normally given. The judge who tried the case died before he could render a decision, and the case was then by stipulation of the respective parties submitted to a second judge upon the court reporter's transcript, the exhibits, the files in the action, and upon briefs to be filed by respective counsel. The court after viewing the premises rendered its decision. There is no merit in appellant's apparent contention that this court should reweigh the evidence, as our duty as an appellate tribunal is merely to determine if the record supports the judgment. The situation except for the viewing of the premises is comparable to a case which is submitted on affidavits. In such a case the same rule applies as in the normal case where the sufficiency of the evidence is in question. (See *Knox* v. *Knox,* 129 Cal.App.2d 795 [277 P.2d 854]; *Goto* v. *Goto,* 52 Cal.2d 118 [338 P.2d 450]; *Atkinson* v. *County of Los Angeles,* 180 Cal.App.2d 467 [4 Cal.Rptr. 423].)

No other points raised require discussion.

The judgment is affirmed.

Pierce, P. J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied March 11, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 3, 1963.

---

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.