STATE BOARD OF TAX COMMISSIONERS *v.* WRIGHT.

[No. 20,111. Filed March 17, 1966. Rehearing denied
June 21, 1966. Transfer denied October 5, 1966.]

*John J. Dillon,* Attorney General, and *Lloyd C. Hutchinson* and *Charles W. Rau,* Deputy Attorneys General, for appellants.

*Robert F. McCrea* and *William T. Hornady,* of Bloomington, and *Thomas & Thomas,* of Brazil, for appellee.

WICKENS, J.—One hundred and four cabins used for temporary dwelling purposes during church conferences are located on premises owned by the Wabash Annual Conference of the Free Methodist Church of North America, Inc.[1] Whether these cabins are entitled to be held exempt from property tax, as being used exclusively for religious purposes and owned and actually occupied by the religious conference is the issue here.

This was a class action brought to the lower court as an appeal from the final determination of the State Board of Tax Commissioners[2] to tax the cabins. The Board appealed here assigning as error the overruling of its motion for new trial.

Appellee, a minister, and others were assessed as the "owners" for property tax on the cabins they occupy during Church conferences. Since 1928 the Church has owned a tract of land which has been and is used for various religious activities. These include an annual ten day summer conference during which time evangelistic and religious instruction is offered for the benefit of ministers and laymen. Also during this conference the Church's work for the coming year is discussed and programed. In addition, each year two children's camps and a young people's camp, each being a week in duration, are conducted for religious instruction purposes. Further annual activities on the Church grounds consist of a two day men's training meeting plus a one day service for the Women's Missionary Society. Testimony was elicited that all such activities and functions are religiously oriented.

The conference grounds are comprised of a large, wooden structure, the tabernacle for worship and services, a youth activities building, a women's missionary building, a memorial structure, a dining hall, an office, and a children's dormitory,

---

1. Hereafter referred to as Church.
2. Hereafter referred to as Board.

all buildings being rustic and camp-like. None of these structures has been taxed. Prior to this action no effort had been made to assess the 104 cabins. Basically these cabins are characterized as being simple frame structures, having dimensions averaging around 14' x 22'. Since the conferences are held during the late summer no heating facilities have been installed in the cabins. Most of them have no running water although water as well as electricity is available. These utilities are paid for in one lump sum and the costs are generally pro-rated among the cabin occupants. At a central location the Church provides toilet and bath facilities. Recreational facilities are termed as "very meager" consisting of an area for baseball and handball plus some play ground facilities for younger children. There is no water for recreational purposes on or within close proximity of the Church grounds. No vacationing is permitted on the grounds and a witness testified he knew of no one who had ever entered the conference grounds in the spring and resided there until the fall.

Evidence further discloses that the only reason for the existence of the cabins in question is to provide shelter for ministers and leading laymen while attending Church conferences. During an additional two week optional period, the cabins may be occupied for purposes of general repair and maintenance. The cabins are also occupied by persons other than appellee and those of the class he represents, the Church exercising the right to assign the cabins to others, whenever full rooming capacity is reached in the other camp-ground facilities. According to the evidence only one occupant ever questioned the Church's rule that the cabins could only be occupied during the prescribed period and upon the Church retaining its firm stand on the matter, the occupant acceded. There was no reoccurance.

Articles of Agreement were entered into between the Church and builders and/or holders of the cabins, copies of which were admitted in evidence. The agreement forms pro-

vide that in consideration of $35 paid initially the Church "rents leases and lets" a designated plot of ground to an occupant for the purpose of erecting a cottage for the use and occupancy by the occupant while attending services and gatherings under the auspices of the Church, "so long as they will and do conform fully with the rules and regulations of such use and occupancy as may be adopted by the party of the first part [the Church] from time to time." No other consideration is provided. Testimony reveals that the Church derives no income from the cabins. Nowhere in the Articles of Agreement is the occupant referred to as an owner nor do the articles confer upon him what we consider to be the legal rights of an owner. Instead the agreement specifically confers residence privileges while attending Church services and gatherings upon the occupant who at all times is governed by the Church's rules and regulations as to occupancy. The instrument does not purport to give the occupant the right to maintain a permanent residence.

The trial court expressly found: that the Board's action was arbitrary and capricious; that the cabins' occupants have no title in the cabins; that title to the cabins is vested in the Church; that the occupants have only a license to build and occupy cabins strictly for religious purposes; that the cabins are a necessary adjunct to the camp for religious purposes; that the cabins are used exclusively for religious purposes; that the Church through its members has at all times constructively occupied the cabins.

All tax exemption is an important topic of public interest. A new and unique inquiry is whether cabins built and/or occupied by church members on church premises for temporary residential purposes during church conferences, should be afforded property tax exemption. A justification for tax exemption is the public benefit. Thus the purpose of exemption, whether under religious or other classification, is to insure that property and funds devoted to one public benefit

are not diminished by being diverted through taxation for another public benefit.

Property tax exemption for religious purposes has its historical roots in antiquity.[3] It is more fundamental than mere tradition. From it has probably sprung those features of estate and income tax laws which exempt contributions for religious, charitable and public purposes and also exempt certain organizations. It is possible that the legal concept of a "charity" and its favorable treatment found in the law of trusts has developed therefrom.

Constitutional authority for permitting tax exemption to property utilized for religious purposes exists in this State:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, *excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes,* as may be specially exempted by law." (Emphasis supplied)

Constitution of Indiana, Art. 10, § 1.

Under this authority the General Assembly has enacted property tax exemption laws, applicable provisions of which read as follows:

---

3. In Biblical times there were instances of favorable tax treatment of the clergy. For example Genesis 47:26 (Douay) proclaims that "From that time unto this day, in the whole land of Egypt, the fifth part is paid to the King, and it is become as a law, except the land of the priests which was free of this covenant." See also Ezra 7:24 (King James).

Also Constantine during the fourth century exempted the Christian ministry from "* * * all personal taxes and contributions, which pressed on their fellow citizens with intolerable weight; and the duties of their holy profession were accepted as a full discharge of their obligations to the republic."

Gibbon, The Decline And Fall Of The Roman Empire, Vol. I, p. 301 (Great Books of the Western World ed. 1952).

"The following property shall be exempt from taxation:

"Fifth. Every building, or part thereof, used and set apart for educational, literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or incorporation, provided the same is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes, . . . .

"Sixth. Every building or part thereof used for religious worship, and the pews and furniture within the same, and also the parsonage belonging thereto and occupied as such, and the land whereon said building or buildings are situate, not exceeding fifteen [15] acres, when owned by a church or religious society, or in trust for its use." Acts 1919, ch. 59, § 5, p. 198, § 64-201 Burns' 1961 Replacement.

These provisions limiting property exempt status also should be noted:

"If all or any part, parcel or portion of any tract or lot of land or any buildings or personal property enumerated in the preceding section as exempt from taxation shall be used or occupied for any other purpose or purposes than those recited in said section by reason whereof they are exempted from taxation, such property, part, parcel or portion shall be subject to taxation so long as the same shall not be set aside or used exclusively for some one of the purposes specified in said enumeration." Acts 1919, ch. 59, § 6, p. 198, § 64-202 Burns' 1961 Replacement,

and

"When real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the lease-hold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." Acts 1919, ch. 59, § 33, p. 198, § 64-204 Burns' 1961 Replacement.

Examination of the statutory history of property tax exemption indicates that Indiana by its General Assembly in 1961 endeavored to improve assessment and collection of property taxes. As a result of this a new real estate reassessment was completed and additional efforts were made to

equalize the burden of taxes on property. No change was then made in the exemption statutes quoted. We refer to the "Property Assessment Act of 1961." Acts 1961, ch. 319, § 101, p. 893, § 64-301 Burns' 1961 Replacement.

It is interesting, and we think important here, to note that in the codification of 1961 the General Assembly expressly declared it would not disturb the status of property which was exempt prior thereto. It said:

> "All classes of property exempt from taxation on the effective date of this act shall continue to be exempt from taxation." Acts 1961, ch. 319, § 301, p. 893, § 64-501 Burns' 1961 Replacement.

We also find some light from the admitted fact that heretofore no question has been raised and the 104 cabins have been understood to be exempt or treated as exempt from property tax. This, of course, gives rise to the premise that the legislature knew how the exemption statutes were being construed and enforced, and was satisfied with that interpretation and the results. A long adhered to administrative interpretation dating from legislative enactment with no subsequent change having been made in the statute involved, raises the presumption of legislative acquiescence which is strongly persuasive upon courts. *Baker* v. *Compton* (1965), 247 Ind. 39, 211 N. E. 2d 162, 164, Vol. 6, #13 Ind. Dec. 663, 666.

Since 1919 we can find no change in the legislation relating to fundamental parts of the exemption statute.

It is true that the exemption statute § 64-201 Burns', *supra*, requires the exempt building to be "used and set apart" for religious purposes. Another provision says the property shall be taxed "so long as the same shall not be set aside or used exclusively for religious purposes," § 64-202 Burns', *supra*.

Very similar statutory language has been construed elsewhere as referring to the primary use and purpose.

"The phrase 'exclusively used' has reference to the primary and incidental use. . . . When the primary purpose is an exempt one, any incidental use of the exempt property for another purpose does not negative the exemption when the incidental use is not for profit." *Multnomah School of the Bible* v. *Multnomah County* (1959), 218 Ore. 19, 29, 343 P. 2d 893, 898.

And in the case of *People ex rel. Watchtower Bible & Tract Society* v. *Haring* (1960), 8 N. Y. 2d 350, 358, 207 N. Y. S. 2d 673, 678, 170 N. E. 2d 677, 680, it was held that:

"While an exemption statute is to be construed strictly against those arguing for nontaxability . . . the interpretation should not be so narrow and literal as to defeat its settled purpose, which in this instance is that of encouraging, fostering and protecting religious and educational institutions."

Courts in other jurisdictions which have statutory "exclusive use" requirements for religious purposes have held personal living quarters to be exempt from taxation especially if incidental and necessary for the effective welfare of the exempt religious institution. Thus in *Silver Bay Ass'n for Christian Conferences & Training* v. *Braisted* (1920), 80 N. Y. S. 2d 548, 15 A. L. R. 2d 1064, 1067, 1068, it was held that employees' only available living quarters at a summer religious camp were tax exempt. In another related case, that of *Syracuse Center of Jehovah's Witnesses* v. *City of Syracuse* (1937), 163 Misc. 535, 297 N. Y. S. 587, 15 A. L. R. 2d 1064, 1067, 1068, the holding was that property, owned by a religious institution, a part of which was used to shelter workmen and students, was totally exempt from taxation as being property held exclusively for religious purposes.

In Illinois, exemption has been extended to frame houses on seminary ground, used for sleeping quarters for clergy, nuns, students, relatives, as well as visitors. *People* v. *Rev. Saletyni Missionaries* (1951), 409 Ill. 370, 99 N. E. 2d 186, 15 A. L. R. 2d Supp. 379, 380.

Priests' residential quarters at a retreat were held to be within the scope of tax exemption accorded to property used exclusively for religious purposes in the case of *Serra Retreat* v. *Los Angeles County* (1950), 35 Cal. 2d 755, 221 P. 2d 59, 15 A. L. R. 2d 1064, 1068. In a more recent and applicable case a California trial court in its memorandum opinion held certain property of a corporation organized for educational and spiritual purposes to be exempt. That court held certain properties to be exempt including:

" '(f) Dormitories, bedrooms, living rooms, dining rooms, kitchens and utility spaces for the use of plaintiff's adherents, youthful or mature, assembled in conclave for two weeks at Shasta Springs each year: It appears from the evidence that these people assemble for the purpose of religious instruction and worship. As such, their activities resemble those of a lay person making a retreat under Catholic auspices, an activity conceded to be tax exempt (Serra Retreat v. County of Los Angeles, 35 C[al.] 2d 755 [221 P. 2d 59]). Likewise, their activities resemble those of Methodists holding an annual conference, for which tax exemption has likewise been conceded (34 Ops. Atty. Gen. 175). The factual situation indicated in that opinion seems very comparable to the facts of the present case.' "

This above excerpt of the trial court's opinion was quoted with approval by the Third Appellate District of the California District Courts of Appeal in the case of *Saint Germain Foundation* v. *County of Siskiyou* (1963), 212 C. A. 2d 911, 917; 28 Cal. Rptr. 393, 396.

A Board contention here is that its action in denying appellee's petition for exemption is final and conclusive pursuant to Acts 1961, ch. 319, § 306, p. 893, § 64-506 Burns' 1961 Replacement, which states that "The action of the state board of tax commissioners shall be final and conclusive." Agency review terminating at this point would be repugnant to due process of law. If the appeal provided by statute is not sufficiently broad, the courts will grant an adequate right to appeal. *Mann* v. *City of Terre Haute et al.* (1960), 240 Ind. 245, 249, 163 N. E. 2d 577.

However, there is a subsequent statutory provision cancelling appellant-Board's contention. This particular provision being Acts 1961, ch. 319, § 1204, p. 893, § 64-1004 Burns' 1961 Replacement states that:

"Any person shall have the right to appeal from the final determination of the state board of tax commissioners regarding the assessment on his property to the circuit or superior court of the county in which said property is being assessed."

Such was recognized as being the controlling law in *State Bd. of Tax Comm'rs* v. *Loyal Order of Moose, Inc.* (1964), 245 Ind. 614, Vol. 3, #22, Ind. Dec. 615, 621, 622, 200 N. E. 2d 221, 226. We therefore hold appellee has the right of an appeal from the action of the Board.

The remaining attack by the Board includes these assertions: 1) occupants of the cabins are lessees, not licensees; 2) the cabins are not actually occupied by the Church; 3) they are not used exclusively for religious purposes; 4) the exemption statute having expressly mentioned parsonages and failing to specify camp-ground cabins, invokes the maxim of expressio unius est exclusio alterius; and 5) that the Board's action was not arbitrary or capricious.

As to these contentions the findings of the trial court on each are adverse. We are in agreement with the action of the trial court on the evidence in the record here. Notwithstanding the use in the agreements of the words "let and lease" the actual effect of these instruments are limited by their own words to a license to occupy a cabin for a very limited time and purpose and always subject to changeable rules and regulations of the Church. The agreement does not constitute a lease but was properly construed to be a mere license.

"Whether a contract be a lease or a license will be determined, not by what the parties to it choose to call it nor from the language, but from the legal effect of its provisions. An instrument is not a demise or lease, although it contains the usual words of demise, if

its contents show that such was not the intention of the parties." 3 Thompson on Real Property, 1959 Replacement, § 1032, p. 102.

As to the occupancy of the cabins by the Church the trial court held they were constructively occupied by the Church through its members. We are in agreement with this. The only purpose and the only use for the cabins was shown to be religious. We can see no distinction between occupancy of property by a church and occupancy by any other corporate body. The members of the corporate body in fact do the physical occupying, but it is still correct to say the premises are occupied by the corporation. Here we have occupancy by the Church, and it is limited to religious use. The trial court properly held the cabins were necessary and were used exclusively to effectuate the religious purpose and activities of the Church.

The religious exemption provisions are entitled to no less favorable treatment and consideration than the other provisions of the exemption statute. In its most recent opinion construing that statute our Supreme Court held in favor of an exemption where lodge dining facilities were involved. *State Bd. of Tax Comm'rs* v. *Loyal Order of Moose, Inc., supra.*

Any narrowing of the statutory construction might contravene the position of the Supreme Court of the United States elucidated by Mr. Justice Douglas who said in *Zorach* v. *Clauson* (1952), 343 U. S. 306, 314, 96 L. Ed. 954, 962, 72 S. Ct. 679, 684:

"But we find no constitutional requirement which makes it necessary for government to be hostile to religion and to throw its weight against efforts to widen the effective scope of religious influence."

That court also has exemplified as a guideline the premise that the state need only remain neutral insofar as the First Amendment of the United States Constitution is concerned.

Mr. Justice Black in *Everson* v. *Board of Education* (1946), 330 U. S. 1, 18, 91 L. Ed. 711, 724, 725, 67 S. Ct. 504, 513, 168 A. L. R. 1392, 1405 said:

"That Amendment requires the state to be a neutral in its relations with groups of religious believers and non-believers; it does not require the state to be their adversary. State power is no more to be used so as to handicap religions than it is to favor them."

Appellant has observed that the maxim of expressio unius est exclusio alterius should be applied in interpreting § 64-201 Burns', *supra,* insisting that the mention of one thing implies the exclusion of another thing. This, it argues, means the legislature having granted tax exempt status to residence properties connected with religious and educational institutions, impliedly intended to exclude cabins in church camp-grounds. The maxim is recognized as a good abstract theory. However, we can see no proper application to be made of it here. To us the "Fifth" clause of said § 64-201, appearing to exclude every building used and set apart for religious purposes by any institution using it for such institution, is not thereafter limited in applicability by the "Sixth" clause which specifically uses the word "parsonage." The findings do not necessarily hold the cabins exempt under the "Sixth" clause.

It is also contended by the Board that its action was not arbitrary or capricious. It has been held that to be arbitrary and capricious such action on the part of an administrative board would have to be action taken without some basis which would lead a reasonable and honest man to such action. *State Bd. of Tax Com'rs* v. *Chicago, etc., R. Co.* (1951), 121 Ind. App. 302, 308, 309, 96 N. E. 2d 279, (Transfer Denied).

It is our duty to accept the ultimate facts stated by the trial court if there is evidence to sustain them. *Miller etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 665, 136 N. E. 2d 17.

". . . 'All intendments and presumptions are taken in favor of the findings rather than against them.' " *Jones et al.* v. *Greiger, Trustee etc. et al.* (1960), 130 Ind. App. 526, 533, 166 N. E. 2d 868.

The trial court's finding as to arbitrary and capricious action and in all other respects is supported by the evidence, is not contrary to law and thus is binding on this court.

For the reasons given we affirm the decision of the trial court.

Prime, C. J., Smith, P. J., Bierly, Carson, Faulconer, Hunter, and Mote, JJ., concur.

### ON PETITION FOR REHEARING

WICKENS, P.J.—If the original opinion of this court in this appeal can be interpreted as conferring by legislative enactment "indelible imprint" of non-taxability or if the opinion can be construed as holding that the legislature purported "to perpetuate the tax exempt status" of certain property, then the opinion needs clarification. Those charges which appellant makes by petition for rehearing, we trust are not the deductions of a disinterested reader.

Our purpose in the opinion was to note that up to the time of this action the General Assembly had indicated no effort to change tax exemptions. We think and trust it is clear to all that this court has not seen nor indicated that it detected an effort by the General Assembly to bind its successors to any tax policy.

As to the principle that a long adhered to administrative interpretation may raise a presumption of legislative acquiescence, appellant seems to interpret this erroneously as a comment on appellant Board's action or lack of action in the past. As part of that argument appellant points out that there was no evidence that the State Board of Tax Commissioners ever had knowledge of and ac-

quiesced in a decision by local assessing officials or county boards of review that such subject property had been ruled by such local officials or local boards to be exempt from taxation. Appellant's assertion is correct as to the evidence. But, administrative interpretation is not limited to interpretation by appellant Board. The interpretation referred to is the interpretation of all administrative agencies. Under the legal fiction mentioned in *Baker* v. *Compton* (1965), 247 Ind. 39, 211 N. E. 2d 162, 164, Vol. 6, #13, Ind. Dec. 663, 666, it is assumed that the legislature knows how local assessing officials and county boards of review had interpreted the exemption statutes, and it is assumed that the legislature was satisfied with that interpretation and the results hereof. Enforcement of tax laws and application of exemption statutes are not intended to be only the obligation of the State Tax Board.

Appellant questions whether the opinion was the "in banc" opinion of this court as referred to in Acts 1901, ch. 247, § 2, p. 565, § 4-202, Burns' 1946 Replacement. So far as the effect of the opinion on the subject matter of this case is concerned, that question appears to be moot.

An "in banc" opinion of this court is no more or or no less binding than the opinion of either division.

In the interest of consistency and where a ruling precedent or a matter of public interest is involved the practice has been followed of consultation with the judges of both divisions. The concurrence of all judges of both divisions merely bears out that that course of conduct was followed here.

The petition for rehearing is overruled.

Smith, C. J., Bierly, Carson, Faulconer, Hunter, Mote, and Prime, JJ., concur.

NOTE.—Reported in 215 N. E. 2d 57. Rehearing denied in 217 N. E. 2d 596.