COUNTY BOARD OF REVIEW ET AL. *v.* FREE
METHODIST PUBLISHING HOUSE ET AL.

[No. 968A147. Filed October 16, 1969. Rehearing denied December 1, 1969. Transfer denied March 16, 1970. Petition to reconsider transfer denied June 2, 1970.]

---

*John J. Dillon,* Attorney General, *Lloyd C. Hutchinson* and *James B. Droege,* Deputies Attorney General, for appellant.

*William I. Garrard* and *Graham Rasor & Harris,* of counsel, all of Warsaw, for appellees.

HOFFMAN, J.—This action for judicial review of an order of the State Board of Tax Commissioners denying real and personal property tax exemptions was begun by plaintiffs-appellees in the Kosciusko Circuit Court in trial to the court, without the intervention of a jury.

The central question involved in this appeal is whether appellee-Free Methodist Publishing House is qualified to receive a property tax exemption pursuant to Acts 1919, ch. 59, § 5, p. 198, as amended at the time pertinent hereto by Acts 1965, ch. 227, § 1, p. 541, Burns Ind. Stat., Anno., § 64-201

(1965 Cum. Supp.),[1] in particular paragraph "Fifth" thereof, which reads as follows:

> "Fifth. Every building, or part thereof, used and set apart for educational[,] literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or corporation, provided the same is owned and actually occupied by the institution, individual, association or corporation using it for such purpose or purposes, and every building owned and occupied, used and set apart, for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any educational institution not exceeding fifty [50] acres; also the lands purchased with the bona fide intention of erecting buildings for such use thereon, not exceeding forty [40] acres; also the personal property, endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid."

The operative facts established by the record before us are as follows:

Appellee-Free Methodist Publishing House (hereinafter referred to as "Publishing House"), during the year 1961, was a not-for-profit corporation, wholly owned, operated and controlled by, and subservient to, the Free Methodist Church of North America, also a not-for-profit corporation.

Appellee-Publishing House owned certain real estate in Kosciusko County, Indiana, on which was situated a building and a parking lot, both also owned by appellee-Publishing House.

The building contained the executive and editorial operations of the Publishing House, the maintenance department, a library for editorial use, a storage area and chapel-meeting

---

[1] The most recent amendment of this Act is found in Acts 1967, ch. 347, § 1, p. 1311, Burns Ind. Stat. Anno., § 64-201 (1969 Cum. Supp.).

room. It also contained printing and binding equipment used by appellee-Publishing House in its business.

Appellee-Publishing House was specifically involved in the printing and distribution of religious periodicals for appellee-Free Methodist Church of North America (hereinafter referred to as "Church"). These periodicals included Sunday School materials, departmental materials and other denominational books and publications. Appellee-Publishing House also made available lesson helps and miscellaneous merchandise used in the conduct of religious services to the various churches and church departments of appellee-Church.

The trial court found that appellee-Publishing House had done a relatively small amount of printing work for another religious denomination and several civic groups.

The trial court further found that all of appellee-Publishing House's personal and real property were used and set aside for religious purposes—specifically the furtherance of the objectives of appellee-Church.

The trial court rendered judgment on its special findings of fact and conclusions of law that appellees were entitled to have their real and personal property exempted from taxation for the year 1961 in its entirety, and vacated and set aside and adjudged null and void the final determination of the State Board of Tax Commissioners in having denied such exemption.

Appellants' motion for new trial, timely filed, was overruled, and this appeal followed.

Appellants raise five specifications of error relative to the decision of the trial court:

1. The decision, finding and conclusions of the lower court are contrary to law, particularly Findings No. 14 and 18, because the use of appellees' real estate and personal property as a publishing house for the printing, binding, sale or furnishing of denominational publications and books, departmental materials, Sunday School materials and other printed materials of The Free Methodist

Church of North America to churches, church departments and congregations of that denomination does not constitute a religious or other exempt use of such property, so as to entitle it to exemption from taxation.

2. The decision, finding and conclusions of the court are contrary to law, particularly Findings No. 16, 17, 20, 21, 22, 23, 24 and 25, in that they conclude that the property of the appellee-Publishing House used in a publishing house business is exempt from taxation because The Free Methodist Publishing House existed and operated as an arm or agency of The Free Methodist Church of North America.

3. The decision, finding and conclusions of the court are contrary to law, particularly Finding No. 19, in concluding that because the net income of The Free Methodist Publishing House is devoted to religious, educational and charitable purposes, that therefore the real estate and personal property of such Publishing House is used for a religious purpose.

4. The decision, finding and conclusions of the court are contrary to law, particularly Findings No. 14(f) and 15, in that they erroneously adopt the so-called primary or principal use test, as being applicable to the question of whether property is eligible for exemption from taxation.

5. The decision, finding and conclusions of the court are not sustained by sufficient evidence, particularly Findings No. 14 to 25, inclusive, because it is admitted that the Publishing House was printing for others than The Free Methodist Church of North America and that it sells merchandise in competition with private merchants.

Appellants rely most heavily on *U. B. Pub. Establishment* v. *Shaffer, Treas.*, 74 Ind. App. 178, 123 N. E. 697 (1919), (Transfer denied), however, an obvious distinction exists between *United Brethren* and this case. The decision in that case rested on Acts 1893, p. 12, Acts 1891, p. 199, § 6. The United Brethren Publishing Establishment was seeking an exemption as a *charitable* organization. It was not until 1937 that the word "religious" was introduced into the statute.

The recent decision of this court in *State Board of Tax Com'rs* v. *Warner Press, Inc.* 145 Ind. App. 20, 248 N. E. 2d 405, 18 Ind. Dec. 59 (1969), appears to be clearly in point.

The facts of the case and the argument of the State Tax Board in *Warner Press* are the same as those in the instant case.

All of the specifications raised in the case before us were specifically answered by this court in *Warner Press*.

As to Specification No. 2, we note that in the *Warner Press* case, Warner Press, Inc., was a wholly owned subsidiary of the Church of God, as is the appellee-Publishing House a wholly owned subsidiary of appellee-Church.

Implicit in the *Warner Press* decision is the following test of the parent-subsidiary relationship relative to the character of the subsidiary: If the subsidiary of a not-for-profit religious corporation is subservient to the religious purposes of the parent, then that subsidiary shares the religious character of its parent.

*Subservient* in this context means that the operation of the subsidiary is directly related to, and in direct furtherance of, the religious purposes of the parent.

Such a test is a reasonable limitation on the corporate structure of a religious institution. While the test remains somewhat subjective, it clearly will reject an exemption for a subsidiary which cannot establish that its operation is directly subservient to the religious purposes of its parent.

Specifications Nos. 4 and 5 both relate to the question of the employment of a "primary use" test. In *Warner Press* Judge Pfaff, speaking for this court, at page 29 of 145 Ind. App., page 411 of 248 N. E. 2d, stated:

> "These parcels are exempt because these two unimproved parcels, while used to return some income with which appellee can reduce expenses, are *used primarily* in the operation and promotion of religion and charity which is consistent with the principles stated in *State Board of Tax Comm.* v. *Indianapolis Lodge, #17, Loyal Order of Moose, supra.* [245 Ind. 614, 200 N. E. 2d 221 (1964)]."

The position of the precedents on this question is sufficiently clear. We would note, however, that "primary use" does not

imply an intention on the part of this court to indulge in guessing games about the nature and use of church-owned corporations and businesses.

It must be abundantly clear to the trial court that the dominant and primary purpose of the operation being conducted is of a religious nature. There is little question in the instant case that the overwhelming, primary and dominant use was of a religious nature, and the trial court properly so found.

Specifications Nos. 1 and 3 raise the question of the inherent purpose of the property in question. Appellants suggest that regardless of the nature of the article manufactured, the operation, *per se,* is that of printing, publishing and binding, and so forth.

Again, we quote Judge Pfaff, speaking for this court, in *Warner Press,* at page 29 of 145 Ind. App., page 410 of 248 N. E. 2d,

> "We substantiate our timid affirmance upon the belief that the appellee meets the liberal requirements of use, occupancy, ownership and application of proceeds necessary to the status of exemption as prescribed by the case of *State Board of Tax Comm.* v. *Indianapolis Lodge, #17, Loyal Order of Moose, supra.* [245 Ind. 614, 200 N. E. 2d 221 (1964)]. *Appellee, in the operation of its printing facility, promotes religion and charity."* (Emphasis supplied.)

The key to the finding of the trial court on the use of appellee-Publishing House's property is the very direct relationship between the product and the religious purposes of appellee-Church. In fact, a not-for-profit religious publishing house holds a rather unique place in this regard. Were appellee-Church to incorporate a subsidiary to manufacture tennis shoes, no such relationship between product and purposes could be established.

Again, the product-purpose analysis is a reasonable limita-

tion on church-owned businesses and is implicit in the holding of *Warner Press.*

There being no error in the judgment of the trial court, we must affirm.

Judgment affirmed.

Pfaff, C.J., and Sharp, J., concur; White, J., not participating.

Note.—Reported in 251 N. E. 2d 486.