SANGRALEA BOYS FUND,
INC., Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9508–TA–00079.

Tax Court of Indiana.

Oct. 22, 1997.

Frank E. Tolbert and John Damm, Miller, Tolbert, Muelhausen, Muelhausen & Groff, Logansport, for Petitioner.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Sangralea Boys Fund, Inc. (Sangralea) appeals the final determination of the State Board of Tax Commissioners (State Board) denying it a property tax exemption for 1992 and 1993. The relevant facts are undisputed, and both parties have filed motions for summary judgment.

The State Board argues that IND.CODE ANN. § 6–1.1–10–16 (West 1989) (amended 1993, 1995) (the Act) requires a unity of ownership, occupation, and use of a piece of property by the party seeking a tax exemption. The State Board's position is that because Sangralea leases the property to other not-for-profit entities, who in turn carry out Sangralea's charitable functions, Sangralea does not use *and* occupy the property and is therefore not entitled to the exemption. Finding that a unity of ownership, occupance, and use is not required, this Court REVERSES the State Board's final determination denying Sangralea an exemption, and GRANTS summary judgment in favor of Sangralea.[1]

### FACTS AND PROCEDURAL HISTORY

Sangralea is a not-for-profit corporation organized in 1957 under Kansas law. The Indiana Secretary of State admitted Sangralea to transact business in Indiana as a not-for-profit corporation in 1963. Sangralea's organizational documents disclose that it was created to provide homes for "young people" and to provide scholarships for students, "especially bible students." (Pet'r Br. at 2); (Resp't Br. at 4). Further, Sangralea furnishes "education, personal adjustment and maturation" for these youths and assists in the "entire program of their social rehabilitation." (Pet'r Br. at 3). Simply put, Sangralea provides guidance and education for troubled children. The parties do not dispute that Sangralea uses its facilities in Onward, Indiana in a manner consistent with its organizational mandates and in compliance with the State's requirements to maintain not-for-profit status. (Pet'r Br. at 4); (Resp't Br. at 4).

In 1987, Sangralea decided to lease portions of the property it owned to three not-for-profit entities: HIM Ministries, White's Institute a/k/a Stow Home, and Villages of Indiana, Inc. (hereinafter collectively referred to as "Lessees"). The leases are rent free and are for the purpose of providing cost-effective operation of Sangralea's activities. (Tr. at 6, 7). Lessees are required to engage in activities consistent with those for which Sangralea was organized and operated. (Pet'r Br. at 7); (Tr. at 28). Sangralea has at all relevant times maintained an "advisory position" with Stow House and a position on the Board of Directors of HIM Ministries and Villages of Indiana. Further, the executive director of Sangralea, Jack D. Laymon, maintains a residence on the property and oversees all the activities that take place.

The Cass County Board of Review denied Sangralea a property exemption on August 20, 1992 and again on August 12, 1993. Sangralea filed two Form 132 petitions with the State Board asking for a review of the denial of these exemptions. The State Board held two hearings regarding the Form 132 petitions. The first hearing took place on July 15, 1994. The second hearing was held on March 21, 1995. On July 3, 1995, the State Board denied Sangralea an exemption for a majority of the property. The State Board exempted the Executive Director's Residence as well as the Administration Building. The remaining portions of the property were deemed taxable and given an assessed value of $108,370. Sangralea filed its original tax

---

1. The Court notes that four grain storage bins located on Sangralea property were used by a local farmer. These were deemed non-exempt by the State Board because they were not used or occupied for charitable purposes by Sangralea or the corporations to whom Sangralea leased the property. The denial of a tax exemption for this property was not addressed by Sangralea in its Brief in Support of Petitioner's Motion for Summary Judgment or at oral argument and is therefore not considered a part of this appeal.

appeal on August 3, 1995. Sangralea filed its motion for summary judgment on March 19, 1996. The State Board filed its own motion for summary judgment on March 25, 1996. This Court heard oral argument regarding both motions on May 29, 1996.

## ANALYSIS AND OPINION

### Standard of Review

■ Summary judgment is appropriate only where no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. IND.TRIAL RULE 56(C). Where there is no genuine issue of material fact, the Court's task is to apply the law to those facts. *Knauf Fiber Glass v. State Bd. of Tax Comm'rs*, 629 N.E.2d 959, 960 (Ind. Tax Ct.1994). Cross motions for summary judgment do not alter this standard. *Roehl Transp., Inc. v. Department of State Revenue*, 653 N.E.2d 539, 541 (Ind. Tax Ct.1995). This Court reverses final determinations by the State Board only when the decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Bender v. State Bd. of Tax Comm'rs*, 676 N.E.2d 1113, 1114 (Ind. Tax Ct.1997).

### Discussion

The Indiana Constitution gives the legislature the discretion to provide a tax exemption for property being used for "municipal, educational, literary, scientific, religious or charitable purposes." IND. CONST. art. X, § 1(a)(1).[2] The General Assembly has provided such an exemption in the Act. The Act provides in pertinent part:

(a) All or part of a building is exempt from property taxation if it is *owned, occupied, and used by a person* for educational, liter-

ary, scientific, religious, or charitable purposes. . . .

(c) A tract of land, including the campus and athletic grounds of an educational institution, is exempt from property taxation if:

(1) a building which is exempt under subsection (a) or (b) is situated on it; and

(2) the tract does not exceed:

(A) fifty (50) acres in the case of

(i) an educational institution; . . .

IND.CODE ANN. § 6–1.1–10–16(a), (c) (emphasis added).

The parties agree that Sangralea actually owns the property and engages in the type of educational, religious and charitable activities required by the Act.[3] The parties also agree that Lessees engage in charitable activities. Sangralea argues that unity of ownership, occupation, and use of the property by a single entity is not required by the language of Act. The State Board has construed the Act as containing just such a requirement. The State Board is incorrect.

■ Tax exemption statutes are strictly construed against the person claiming the exemption. *Department of State Revenue v. Fort Wayne Nat'l Corp.*, 649 N.E.2d 109, 113 (Ind.), *cert. denied,* —— U.S. ——, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). The Court should give words their common and ordinary meaning without over-emphasizing a strict literal or selective reading of individual words. *Spaulding v. International Bakers Servs., Inc.,* 550 N.E.2d 307, 309 (Ind.1990). However, exemption statutes are not to be construed so narrowly as to defeat the legislature's purpose in enacting them. *Mechanics Laundry v. Department of State Revenue,* 650 N.E.2d 1223, 1227 (Ind. Tax Ct.1995).

---

2. As early as 1879, the Indiana Supreme Court scrutinized our Constitution and its focus with respect to tax exemption statutes. The Court said that our Constitution, "contemplates the character and purpose of the property that may be exempted from taxation, not the character and purpose of the owner of the property." *State ex rel. Tieman v. City of Indianapolis,* 69 Ind. 375, 377 (1879). The Court also said that the use of the property will authorize the exemption of property from taxation. *Id.* at 378. These statements make clear that our Supreme Court's understanding of the Indiana Constitu-

tion was that it required utilization of the property in furtherance of charity as a minimum limitation. This limitation must be included by the legislature in any legislation granting a property tax exemption. This is not to say that other requirements may not be added by the legislature when enacting exemption statutes.

3. Sangralea's exempt functions and purposes will be referred to simply as "charitable purposes" throughout this opinion.

For guidance in determining the intent of the legislature, it is proper to examine the history surrounding the Act. *See Harris v. City of Muncie,* 163 Ind.App. 522, 325 N.E.2d 208, 211 (1975); *see also Jefferson Smurfit Corp. v. Department of State Revenue,* 681 N.E.2d 806 (Ind. Tax Ct.1997) (examination of legislative history to interpret statute). As recently as 1971, Indiana exempted buildings from tax if "used and set apart for ... charitable purposes ... provided the same is owned and *actually* occupied by the institution, individual or corporation using it for such purpose." IND.CODE ANN. § 64–201 (Burns 1971) (emphasis added). However, courts interpreted this statute liberally.

An example of this interpretation is *State Bd. of Tax Comm'rs v. Wright,* 139 Ind.App. 370, 215 N.E.2d 57 (1966). *Wright* involved a church seeking a property tax exemption for cabins used to house ministers and laypersons during religious conferences. The cabins were built by those who would later occupy them at the religious conferences. The State Board denied the exemption because it concluded that the church did not actually occupy the buildings. The trial court reversed this State Board decision. The Court of Appeals affirmed the trial court's finding that the requirements of the statute were satisfied because the cabins were constructively occupied by the church through its members. *Id.* at 63. In its holding, the Court stated that "[t]he only purpose and the only use of the cabins was shown to be religious." *Id.* The Court of Appeals' ruling demonstrates that the Act's predecessor, even though requiring "actual" occupancy and a unity of ownership, occupa-

tion, and use, was construed liberally to allow a charity flexibility in choosing the best methods of carrying out its mission with its property. The analysis in *Wright* plainly revolved around the use of the property in furtherance of the charity's exempt purpose. Other cases contained similar analysis. *See State Bd. of Tax Comm'rs v. Indianapolis Lodge #17, Loyal Order of Moose,* 245 Ind. 614, 200 N.E.2d 221, 225 (1964); *Himes v. Free Methodist Publishing House,* 145 Ind. App. 463, 251 N.E.2d 486, 489 (1969).[4]

In 1975, the Act was rewritten in its present form. Act of Mar. 18, 1975, No. 45, § 1, 1975 Ind. Acts 247, 312. The recodification in 1975 included an uncodified savings clause which stated that the "substantive operation and effect of any law repealed ... shall continue without interruption if that law is reenacted, in the same or restated form, by this act." *Id.* § 5, 1975 Ind. Acts at 466. By removing the word "actually," and reorganizing the wording of the statute, this Court believes the legislature did not reenact the law in the same or in a restated form. Instead, the legislature eased the restrictions contained in the 1971 version of the statute.[5] *See Allstate Ins. Co. v. Larkin's Body Shop & Auto Care, Inc.,* 673 N.E.2d 846, 848 (Ind. Ct.App.1996) (it may be presumed that the legislature was cognizant of the meaning of language in the old version of an Act and intended to change the law with its deletion of such language).

The legislature's clear intent in adopting the new version of the Act is to approve judicial interpretations focusing on use for charitable purposes. "The legislature is presumed to have had in mind the history of the

---

4. The Court takes this opportunity to note that the Act, or its predecessor, has been applied many times by the State Board. *See St. Mary's Med. Ctr., Inc. v. State Bd. of Tax Comm'rs,* 534 N.E.2d 277 (Ind. Tax Ct.1989), *adopted* 571 N.E.2d 1247 (Ind.1991); *LeSea Broad. v. State Bd. of Tax Comm'rs,* 525 N.E.2d 637 (Ind. Tax Ct.1988); *Wright,* 139 Ind.App. 370, 215 N.E.2d 57; *Indiana Univ. Found. v. State Bd. of Tax Comm'rs,* 527 N.E.2d 1166 (Ind.Tax Ct.1988); *Himes,* 145 Ind.App. 463, 251 N.E.2d 486, 489; *Loyal Order of Moose,* 245 Ind. 614, 200 N.E.2d 221. Of these, only *St. Mary's* and *I.U. Foundation* mention a requirement of a strict unity of ownership, occupancy, and use. These cases, both written by this Court, turn on the perceived

motive behind the particular arrangement involved, not the lack of a strict unity. A careful reading of each case demonstrates that a concurrence of ownership, occupation, and use *in furtherance of charitable goals* was, and is, the focus of any examination of compliance with the Act.

5. Whether the savings clause does or does not affect the current version of the Act does not affect the outcome in this case. Even had the language of the Act remained unchanged, the liberal construction given the Act in its old form would result in the Court reaching the same conclusion it does today.

act, and the decisions of the courts upon the subject-matter of the legislation being construed." *Moses v. Cober,* 641 N.E.2d 668, 670–71 (Ind.Ct.App.1994); *see also Hahn v. Moore,* 127 Ind.App. 149, 133 N.E.2d 900, 903–04 (1956) (holding that legislature is presumed to be aware of judicial interpretations of statute); *Pea v. Pea,* 498 N.E.2d 110, 114 (Ind.Ct.App.1986) (legislature is assumed to be mindful of existing jurisprudence and law on the same subject). Had the intent of the legislature in drafting the new version of the Act been to continue the requirement that a single entity satisfy the three requirements, the legislature would have simply said so. The language of the 1971 version could have remained unchanged. Language such as "owned, occupied, and used by one person for charitable purposes" or "occupied and used by the owner for charitable purposes" could have clearly and easily retained the meaning of the 1971 version of the Act. The Legislature chose not to do so. Instead, it rewrote the Act in less restrictive manner. This strongly indicates that the intent of the legislature was to codify judicial interpretations of the Act—interpretations that focused on furtherance of charitable purposes.

■ This conclusion is buttressed by an examination of the other statutes surrounding the Act. Statutes are to be construed in the context of the whole act of which they are a part, giving effect, if possible, to each word and clause. *Cooper Indus. v. Department of State Revenue,* 673 N.E.2d 1209, 1212 (Ind. Tax Ct.1996); *see also Guinn v. Light,* 558 N.E.2d 821, 823 (Ind.1990). Statutes applicable to the same subject matter should be construed in harmony with one another. *Caylor–Nickel Clinic, P.C. v. Department of State Revenue,* 569 N.E.2d 765, 768 (Ind. Tax Ct.1991), *aff'd,* 587 N.E.2d 1311 (Ind.1992). Courts will not construe a statute in a manner that will render another statute a nullity. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993).

IND.CODE ANN. § 6–1.1–10–37 (West 1989) provides that exempt property, when leased to an entity whose property is not exempt, becomes taxable as if owned by the lessee. If one considers the intent of the legislature when adopting section 6–1.1–10–37, it appears clear that the aim was to prevent an entity from qualifying for exempt status and subsequently leasing the property to another non-exempt entity for the financial gain of either of the parties. Similar restrictions were not included regarding leases of property to exempt entities. If the Act demanded a unity of ownership, occupation, and use by the original exempt entity, section 6–1.1–10–37 would be superfluous. Because a lease to any entity would destroy the exemption based on the State Board's reading, the legislature would have no need to include a specific provision denying an exemption to entities leasing property to one whose property is non-exempt.

The State Board's reading of the Act is also contrary to the rationale behind the granting of tax exemptions. The legislature enacts tax exemptions in instances where a public benefit will be derived from the granting of the exemption. *See Foursquare Tabernacle Church v. State Bd. of Tax Comm'rs,* 550 N.E.2d 850, 854 (Ind. Tax Ct.1990). Historically, the purpose of providing tax exemptions to charities has been to reward them for providing a public benefit. *See Raintree Friends Housing v. Department of State Revenue,* 667 N.E.2d 810, 814 (Ind. Tax Ct.1996).

If one seeks to reward charities for their activities and to encourage beneficial public service, drafting a statute that severely limits the ability of a charity to organize and operate in an efficient and cost-effective manner would be illogical. To be sure, the words "own, occupy, and use" restrict the activities that may be conducted on the property before an entity will qualify for an exemption. However, the intent of the legislature is not to force a single charitable entity to achieve a unity of ownership, occupation, and use, but to ensure that the particular arrangement involved is not driven by a profit motive. Denying a property owner a tax exemption for allowing organized charities the use of the property discourages the commitment of such property for charitable uses. The legislature did not intend this when passing the Act. This Court will not construe a law in a manner clearly offensive to the intent of the legislature.

It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.... This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in statute, words broad enough to include an act in question, and yet a consideration of the whole legislation ... or of the absurd results which follow from giving such a broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. *Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1891); *see also State ex rel. Clark v. Stout,* 206 Ind. 58, 187 N.E. 267, 268 (1933) (where court can construe statute in harmony with spirit and purpose of act, it will do so). Further, this Court may not construe a law in a manner that would impair the function the legislature intended it to possess.

■ The Act is decidedly aimed at fostering the operations of charitable enterprises by allowing a tax exemption for engaging in conduct beneficial to the general public. All the while, the Act contains specific limits of ownership, occupation, and use in furtherance of charitable goals. These limits prevent an entity from leasing property to another, for either party's profit, and claiming an exemption. Requiring ownership, occupancy and use *in furtherance of charitable purposes* ensures continued public benefit will be derived from the exempt property, but still provides adequate protection against tax evasion. Stated differently: a piece of property must be owned for charitable purposes; a piece of property must be occupied for charitable purposes; a piece of property must be used for charitable purposes. Once these three elements have been met, regardless of by whom, the property can be exempt from taxation.

The Court is well aware of the prophylactic qualities of the State Board's position and the concerns about abuse of the property tax system. However, the Court is quite confident that the State Board, aided by the local taxation authorities, has ample resources to police the property tax system effectively, thereby preventing abuse. This ability will ensure that a property owner will not be able to escape taxation under the guise of using the property for charitable purposes.

Moreover, this Court affords the State Board great deference in its factual determinations, and the State Board is completely capable of examining the facts surrounding any particular case to ferret out abuse. Therefore, it is unnecessary to engraft, in the absence of an express statutory provision, the technical requirement of unity of ownership, occupancy, and use into the Act.

■ Because a property's exempt status is tied to its use, it is clear that Sangralea is entitled to an exemption. Sangralea owned the property and ensured it was used in charitable work. Sangralea does not own the property as investment property or with a motive of profit. The use and occupation of the property by the Lessees is in furtherance of Sangralea's exempt purposes. Sangralea contracted with Lessees to operate the property in a manner consistent with Sangralea's charitable purposes. Lessees and Sangralea have simply come to an agreement as to the method of producing public benefit from the property. No profit is made on the venture, and noble goals[6] are accomplished. Therefore, the property is owned, occupied, and used for charitable purposes.[7] The State Board erred in disallowing the exemption.

### *CONCLUSION*

This Court holds that IND.CODE ANN. § 6–1.1–10–16 does not require a single entity to own, occupy, and use a piece of property before it can be exempted from taxation. The Act requires that property be dedicated

---

6. The Court notes that the State Board described the goals of Sangralea as "noble" during oral argument. (Tr. at 26).

7. Sangralea has also argued that it constructively occupies and uses the property. However, as noted above the Court will not reach this argument because the statute does not require a unity of ownership, occupancy, and use.

to furthering charitable purposes. Sangralea's property does further charitable purposes. The final determination of the State Board is an abuse of discretion and exceeds statutory authority. The State Board's final determination is therefore REVERSED and summary judgment is GRANTED in favor of Sangralea.