**ALTE SALEMS KIRCHE, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9507–TA–00060.**

Tax Court of Indiana.

May 1, 1998.

Mark A. Scherer, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

Alte Salems Kirche, Inc. (Alte Salem) appeals a final determination of the State Board of Tax Commissioners (State Board) denying it an exemption from property taxation for the 1990 tax year.

## BACKGROUND AND PROCEDURAL HISTORY

Alte Salem is a non-denominational church located in a remote section of Posey County. In 1974, Alte Salem was incorporated as an Indiana not-for-profit organization. In this original tax appeal, Alte Salem seeks a property tax exemption for improvements and personal property consisting of the church building, a barn, and a mobile home. Collectively, this property has an assessed value of $4,670. The land, upon which the improvements and personal property lie, is not owned by Alte Salem. Alte Salem leases the land from Ms. Pauline L. Burgdorf, a director of Alte Salem.[1]

The church building looks like a typical church. It has a steeple, a bell, an altar, pews, stained glass windows, and a piano. The barn is used for storage. The mobile home is rented out to various people. The money received from the mobile home rent goes toward the maintenance of the church. According to Ms. Burgdorf, renting out the mobile home serves to prevent vandalism of the church building and makes it easier to procure insurance because it maintains a presence on the property.

Alte Salem loses money almost every year. Ms. Burgdorf often uses her own funds to make up for the shortfalls. Although the record is unclear on this point, it appears that Alte Salem received a property tax exemption from the date of its incorporation until 1983. In 1983, Alte Salem lost its exempt status.

On May 10, 1990, Alte Salem applied for a property tax exemption pursuant to IND. CODE ANN. § 6–1.1–10–16 (West 1989) (amended 1993, 1995 & 1997). On August 14, 1990, the Posey County Board of Review (BOR) denied Alte Salem's application, and Alte Salem appealed this decision to the State Board of Tax Commissioners. The State Board held a hearing on September 4, 1991, and on May 5, 1995, the State Board issued a final determination sustaining the BOR's decision. On June 22, 1995, Alte Salem filed this original tax appeal. The parties tried this cause on April 16, 1996. Oral argument followed on November 11, 1996.

## ANALYSIS AND OPINION

### Standard of Review

This Court gives great deference to the State Board when it acts within the scope of its authority. Accordingly, this Court will only reverse a final determination of the State Board when it is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 956 (Ind.Tax Ct.1997), *review denied.*

### Discussion

Alte Salem contends that the improvements and personal property are exempt from property taxes because they are used for religious, charitable, and educational purposes. Under section 6–1.1–10–16(a), "all or part of a building is exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes." In *Sangralea Boys Fund*, 686 N.E.2d at 959, this Court construed that statutory provision to mean that property will be exempt from property tax when it is owned for an exempt purpose, when it is used for an exempt purpose, and when it is occupied for an exempt purpose. Although exemptions are strictly construed in favor of taxation and against tax exemption, *see id.* at 956, the listed exempt purposes are to be construed broadly and in accordance with their constitutional meaning. *See LeSea Broad. Corp. v. State Bd. of Tax Comm'rs*, 525 N.E.2d 637, 639 (Ind.Tax Ct.1988); *Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs*, 145 Ind.App. 522, 251 N.E.2d 673, 680 (1969); *State Bd. of Tax Comm'rs v. Methodist Home for the Aged,*

---

1. The exemption of the land is not an issue in this case.

143 Ind.App. 419, 241 N.E.2d 84, 87 (1968) (en banc); IND. CONST. art. X, § 1(a).

In its final determination, the State Board stated, "Alte Salems Kirche, Inc. does not function as a church or religious society and has offered no substantive evidence to qualify for exemption as religious...." (Ex. C at 10). Under this Court's limited standard of review, this Court gives great deference to the factual findings of the State Board. *See Sangralea Boys Fund*, 686 N.E.2d at 959. This Court may not reverse a final determination of the State Board simply because it disagrees with how the State Board found the facts, and it is improper for this Court to substitute its judgment for that of the State Board.

At trial, Alte Salem presented the testimony of one of its directors, Ms. Burgdorf. Ms. Burgdorf testified at length concerning the history and the activities conducted at Alte Salem. Mr. Dennis Neuhoff, the State Board hearing officer, admitted that Ms. Burgdorf's testimony was consistent with the evidence she presented at the State Board hearing.[2] (Trial Tr. at 65). Accordingly, this Court may consider that evidence. *See* IND. CODE ANN. § 33-3-5-14 (West 1996); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.*, 420 N.E.2d 1324, 1328 (Ind.Ct.App. 1981).

Ms. Burgdorf recounted the story of a small, non-denominational church. Originally, the church building served as a church for a local congregation of which Ms. Burgdorf was a member. When the congregation wished to build a new church, Ms. Burgdorf and others purchased the church building, which was built in the 1800s, and moved it to its present location.[3] Ms. Burgdorf and others incorporated Alte Salem shortly after the move.

According to Ms. Burgdorf, the purpose of Alte Salem was to provide a place where people could attend to their spiritual needs. Alte Salem was never supposed to be a "regular" church with a congregation and a minister. Rather, it was supposed to be a place where anyone, regardless of their adherence to the beliefs of any particular denomination, could come to pray and worship. To that end, the church building remained unlocked, and many individual worshipers have used the church building. (Trial Tr. at 22–23).

Although one of the main purposes of Alte Salem was that individuals could use the church to attend to their own spiritual needs, the church building was often used by other churches for meetings and worship services. (Trial Tr. at 25–26). Other church organizations used the church building for Bible studies. No particular church ever used Alte Salem regularly for worship services. This was in keeping with the non-denominational nature of Alte Salem's mission. Other organizations, such as environmental groups, used Alte Salem for meetings. The Girl Scouts also had meetings there and were allowed to use the property so that individual girl scouts could achieve their outdoor merit badges. Ms. Burgdorf testified that all these activities happened in 1990 or prior to that year and that the usage of the church re-

2. Mr. Neuhoff's testimony on this point varied somewhat. On page 65 of the trial transcript, Mr. Neuhoff stated Ms. Burgdorf's testimony was "fairly consistent" with the evidence she had presented at the administrative level. However, on page 83 of the trial transcript, Mr. Neuhoff stated that he was told that the property was only used three or four times a year. At the point where Mr. Neuhoff stated that Ms. Burgdorf's testimony was "fairly consistent," Ms. Burgdorf had already testified about other activities taking place on the property. In any event, this Court need not worry about the inconsistencies in Mr. Neuhoff's testimony and their effect on this Court's ability to recreate the record of what was presented at the administrative level. The State Board did not object to the bulk of Ms. Burgdorf's testimony, and at oral argument, the State Board admitted that all of the evidence presented at trial was presented at the administrative hearing. (Oral Arg. at 19–20). The Court also notes that the proper way for the State Board to prevent evidence that was not presented at the administrative level from being considered by this Court is to lodge an objection. *See Indiana Ass'n of Seventh–Day Adventists v. State Board of Tax Comm'rs*, 512 N.E.2d 936, 940 (Ind.Tax Ct.1988) ("The court assumes that the same evidence was presented at the administrative hearing since there was no objection to the testimony at trial.").

3. As stated previously, Alte Salem leases land from Ms. Burgdorf. At trial, Ms. Burgdorf testified that her sole purpose for purchasing the land was to provide a place for Alte Salem.

mained the same throughout its existence. (Trial Tr. at 29).

The evidence presented paints a picture of a small country church operating on a shoestring budget struggling to survive. However, in its final determination, the State Board concluded that the property was only used "approximately four times a year" for parties, picnics and reunions, and that there was no substantive evidence presented to support the exemption claim. This ignores Ms. Burgdorf's testimony about the individual worshippers using the church building, other churches and groups using the church building, as well as her own use of the church building.

Perhaps realizing the tenuousness of its position, the State Board argues that this Court must limit its consideration of the evidence to only those events that took place in 1990.[4] According to the State Board, much of Ms. Burgdorf's testimony was not relevant to the determination of Alte Salem's exempt status because it was not specifically tied to the 1990 tax year. Therefore, the State Board hearing officer had very little probative evidence from which to make his findings. The evidence that related specifically to the 1990 tax year only demonstrated that the property was used three or four times and that at least two of those events were recreational. As a result, Alte Salem could not establish that the predominant use of the property was for exempt purposes. *See* IND. CODE ANN. § 6–1.1–10–36.3 (West 1989). It is readily apparent that the State Board's position that Alte Salem produced no substantive evidence to support its exemption claim hinges on acceptance of the State Board's contention that only events taking place during 1990 were relevant.

■ The State Board's position is contrary to law. Evidence of events occurring in other tax years should be considered if relevant to a fact existing during the tax year. *See Governours Square Apartments v. State Bd.*

*of Tax Comm'rs*, 528 N.E.2d 864, 866 (Ind. Tax Ct.1988) (citing *Youngstown Sheet & Tube Co. v. Mahoning County Bd. of Revision*, 66 Ohio St.2d 398, 422 N.E.2d 846 (1981)). This is particularly true in cases where property is claimed to be exempt under section 6–1.1–10–16. In these cases, the central question is the purpose for which the property is being used. Events occurring outside of the tax year at issue may shed a great deal of light on the purpose for which the property is used during that tax year. Ms. Burgdorf's testimony was relevant to the 1990 tax year, and it constituted substantive evidence in support of Alte Salem's exemption claim.

■ The State Board also argues that the fact that the church building is left unlocked and held open to anyone with little or no supervision means that it is impossible to determine that the property is being used for exempt purposes. This argument is unpersuasive. Ms. Burgdorf's uncontradicted testimony indicated that Alte Salem's purpose was to provide a place for anyone to attend to their spiritual needs as they saw fit. That some people may have used the church building for other purposes does not invalidate the purposes of Alte Salem. Additionally, the fact that some non-exempt recreational activities may have taken place on the property does not necessarily lead to the conclusion that Alte Salem does not further exempt purposes. As has been shown, these non-exempt activities (i.e., the picnic and reunion) were viewed in isolation because the State Board failed to consider all the relevant evidence. When viewed in light of the evidence that was not considered, it appears that the non-exempt activities may have been mere innocent collateral activities. *See LeSea Broad. Corp.*, 525 N.E.2d at 638–39 (quoting *Buffalo Turn Verein v. Reuling*, 155 Misc. 797, 281 N.Y.S. 545, 546 (Sup.Ct.1935)).

The State Board also points to the fact that Alte Salem does not conduct regular religious services and that Alte Salem does

---

**4.** The Court notes that the State Board did not state in its written findings that it considered events that took place in years other than 1990 irrelevant. *See 20th Century Fiberglass v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1376, 1377 (Ind.Tax Ct.1997) (in general, State Board may

not support its final determination with post hoc rationalizations); *Scheid v. State Bd. of Tax Comm'rs*, 560 N.E.2d 1283, 1284 (Ind.Tax Ct.1990) (same). Doing so would have facilitated judicial review in this case.

not have clergy or a congregation. At oral argument, counsel for the State Board argued that this meant that the State Board was required to closely scrutinize the application for an exemption. In *Sangralea Boys Fund*, 686 N.E.2d at 959, this Court noted its confidence that the State Board, aided by local taxation officials, would be able to ferret out abuse of the exemption provisions. Accordingly, the State Board acts properly when it takes a hard look at the use of certain property, especially where, as here, the property's use does not have the normal hallmarks of religious activity.

In this case, however, there is no evidence that Ms. Burgdorf is attempting to abuse the system. At oral argument, the State Board conceded that Ms. Burgdorf "has a worthy motive here." (Tr. at 17). The only issue, therefore, is whether Alte Salem uses the property for exempt purposes. The State Board failed to consider all the evidence germane to that issue and consequently abused its discretion.

The parties also dispute the exempt status of the barn and the mobile home. In its final determination, the State Board did not consider the exempt status of the barn and mobile home apart from its consideration of the exempt status of the church building. Apparently, the State Board felt that if the church building did not qualify for an exemption, then the barn and the mobile home did not qualify either. The State Board now attempts to support its conclusion that the barn and mobile home are not exempt by arguing that they are not reasonably necessary for the furtherance of an exempt purpose. With respect to the mobile home, the State Board argues that it cannot be exempt because no one who lives there performs pastoral duties.[5]

In Indiana, property that is " 'incidental and necessary' for the effective welfare of [an] exempt religious institution" is exempt from property taxation. *LeSea Broad.*, 525 N.E.2d at 639 (quoting *State Board of Tax Comm'rs v. Wright*, 139 Ind. App. 370, 215 N.E.2d 57, 62 (1966)). This "incidental and necessary" standard has been construed to mean "reasonably necessary." *See id.* (quoting *House of Rest of the Presbyterian Church v. Los Angeles County*, 151 Cal.App.2d 523, 312 P.2d 392, 398 (1957)). Ms. Burgdorf's testimony indicated that the barn was necessary for the storage of equipment and picnic tables and that the mobile home played a large role in reducing vandalism of the property because it maintained a human presence on the property. This could support a finding[6] that the barn and mobile

---

5. In its final determination, the State Board found that one of the directors of Alte Salem, Mr. Walt Miller, lived in the mobile home. Mr. Neuhoff testified that Mr. Miller, who has since died, stated at the hearing that he lived in the mobile home. Ms. Burgdorf strongly disputed this finding at trial and stated unequivocally that no director had ever used the mobile home as a personal residence. (Trial Tr. at 33–34). She also stated that at the time of the hearing, Mr. Miller was staying on the property in his own camper, not the mobile home belonging to Alte Salem. (Tr. at 33–34). According to Ms. Burgdorf, Mr. Miller was there so that he could replace the bathroom floor of the church building. The State Board does not contend that she stated otherwise at the administrative hearing.

At trial, when asked if he was certain that Mr. Miller said this, Mr. Neuhoff stated, "It's been four years." (Trial Tr. at 55) Mr. Neuhoff added that his notes stated that Mr. Miller lived in *a* mobile home (Trial Tr. at 55). In light of Ms. Burgdorf's unequivocal testimony, the fact that there were two mobile residences on the property, and that Mr. Neuhoff was less than certain about what Mr. Miller stated at the hearing, the Court finds that the record does not support the State Board's factual finding that Mr. Miller lived in *the* mobile home belonging to Alte Salem.

6. The Court notes that the State Board is attempting to support its final determination with respect to the barn and the mobile home by arguing alternative bases for its decision. A review of the record reveals that the State Board did not deny the exemption for the barn and the mobile home because it did not consider them reasonably necessary for the furtherance of an exempt purpose. Nor did it deny the exemption for the mobile home because the mobile home did not house persons who performed pastoral duties. Rather, it based its decision that the barn and the mobile home were not exempt because it decided that Alte Salem did not further an exempt purpose in the first place.

The question of whether the barn and mobile home are reasonably necessary for an exempt purpose is a *factual* determination. *See LeSea Broad.*, 525 N.E.2d at 639. This factual determination was not made by the State Board. Therefore, the only way for this Court to uphold the State Board's final determination with respect to the barn and the mobile home is to conclude

home are reasonably necessary to further an exempt purpose (assuming of course that Alte Salem is found to further an exempt purpose).

The State Board's argument that the mobile home cannot be exempt from property taxation because no one who lives there performs pastoral duties also contravenes precedent. In *Seventh–Day Adventists*, 512 N.E.2d at 940, this Court found that property used for housing may qualify for an exemption despite the fact that the property was not used to house ministers. This Court declines the State Board's implied invitation to overrule *Seventh–Day Adventists*.

### CONCLUSION

The State Board failed to consider all the evidence relevant to Alte Salem's exemption claim. Accordingly, this cause is REMANDED for further consideration not inconsistent with this opinion.

that, *as a matter of law,* the barn and mobile home were not exempt.