**CITY SECURITIES CORP., Petitioner,**

v.

**DEPARTMENT OF STATE REVENUE, Respondent.**

**No. 49T10–9505–TA–00049.**

Tax Court of Indiana.

Dec. 30, 1998.

---

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

City Securities Corp. (City) challenges the Department of State Revenue's (Department) decision to assess gross income tax on income City earned from the sale of bonds issued to fund school projects and sewer projects (hereinafter "the bonds"). City raises two issues for this Court's review:

**I.** Whether the Department's failure to issue a letter of findings in a timely man-

ner voids the assessment of gross income tax made by the Department.

**II.** Whether the Department has the authority to assess gross income tax on the profit made on the buying and selling of the bonds when the bonds are:

    **a.** exempt from gross income tax under their enabling statutes and;

    **b.** have been treated as exempt by the Department for forty-two years.

### FACTS

City is a corporation engaged in the business of buying and selling securities for profit. During the years 1989, 1990, and 1991, City sold bonds that had been issued by school building corporations and political subdivisions to raise revenue for various projects. In 1992, after an audit of City's records, the Department issued notices of proposed assessment against City for additional gross income tax, interest, and penalties related to City's sale of the bonds.

The Department based this assessment on the fact that City sold the bonds at a higher price than it paid for the bonds. In short, City purchased the bonds and then sold them for a profit without waiting for the bonds to mature and earn interest. City filed a written protest with the department on February 5, 1993 challenging the proposed assessment.

On April 12, 1994, the Department held a hearing on City's protest. The Department issued its Letter of Findings (LOF) on July 26, 1994, 105 days after the hearing. The Department concluded in its LOF that City did not owe a tax penalty but that the income gained from the sale of the bonds was taxable. On September 26, 1994, the Department issued Assessment Notices to City requesting payment of the additional gross income tax liability and interest. City paid the assessments and then filed a claim for refund of the assessments with the Department on October 31, 1994.

After more than 180 days had passed without action by the Department on City's claim for refund, City initiated an original tax appeal in this Court on May 26, 1995. *See* IND.CODE ANN. § 6–8.1–9–1(c)(3) (West Supp.

1998). Both parties filed motions for summary judgment.[1]

## ANALYSIS AND OPINION

### Standard of Review

■ This court reviews final determinations of the Department de novo and is bound neither by the evidence nor the issues raised at the administrative level. *See* IND. CODE ANN. § 6–8.1–9–1(d) (West Supp.1998); *ANR Pipeline Co. v. Department of State Revenue*, 672 N.E.2d 91, 93 (Ind. Tax Ct.1996). Summary judgment is appropriate only when no genuine issue of material fact exists. IND. T.R. 56(C); *Roehl Transp., Inc. v. Department of State Revenue*, 653 N.E.2d 539, 541 (Ind. Tax Ct.1995).

### Discussion

■ Before the Court is able to address the parties' arguments, it must first examine whether it has jurisdiction to hear this appeal. Although neither party raises the issue of the Court's jurisdiction, the Court is required to raise the issue *sua sponte. See City of New Haven v. Chemical Waste Management, L.L.C*, 685 N.E.2d 97, 102 (Ind.Ct. App.1997); (citing *Santiago v. Kilmer*, 605 N.E.2d 237, 240 (Ind.Ct.App.1992), *trans. dismissed*, 698 N.E.2d 1185 (Ind.1998)). The question of whether this Court has jurisdiction over this case arises from a reading of two statutory provisions.

The first of these statutory provisions states: "[T]he tax court does not have jurisdiction to hear an appeal that is filed more than one hundred eighty (180) days after the date on which the letter of findings is issued by the department." IND.CODE ANN. § 6–8.1–5–1(g) (West Supp.1998). The second deals with taxpayers who believe they have paid more tax than they owe and have filed a claim for refund. That section reads:

If the person disagrees with any part of the department's decision, he may appeal the decision, regardless of *whether or not he protested the tax payment* or whether or not the person has accepted a refund.

The person must file the appeal with the tax court. The tax court does not have jurisdiction to hear a refund appeal suit, if:

. . .

(3) the appeal is filed both before the decision is issued and before the one hundred eighty-first day after the date the person files the claim for refund with the department.

IND.CODE ANN. § 6–8.1–9–1(c) (emphasis added).

Thus, under section 6–8.1–5–1(g), a taxpayer who files a protest and receives an LOF must file an appeal within 180 days for this Court to have jurisdiction. In this case, City received an LOF in July 1994 but did not initiate an original tax appeal until March 1995. A reading of section 6–8.1–5–1(g) in isolation would lead to the conclusion that this Court would not have jurisdiction to hear City's appeal. However, section 6–8.1–9–1(c) confers jurisdiction on this Court to hear an appeal when the taxpayer has waited at least 181 days (and less than three years) but has received no determination from the Department regarding his claim for refund "whether or not [the taxpayer] protested the tax payment. . . ." *Id.*

■ In the present case, after City received the LOF, it paid the assessed taxes and then filed a claim for refund. City waited until more than 180 days had passed from the date it filed its claim for refund to file an appeal with this Court. Therefore, jurisdiction to hear City's appeal on its refund claim appears to be conferred on this Court by section 6–8.1–9–1(c), while jurisdiction to hear this appeal is, at the same time, denied by section 6–8.1–5–1(g).

■ It is important to remember that statutes applicable to the same subject matter should be construed in harmony with one another. *See Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 958 (Ind. Tax Ct.1997), *review denied;* (citing *Caylor–Nickel Clinic, P.C. v. Department of*

---

1. The Department did not file an actual motion requesting summary judgment. However, in its response to City's motion for summary judgment, the Department asks the Court to render summary judgment in its favor. (Resp't Br. at 8). "When any party has moved for summary judg-

ment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." IND. T.R. 56(B); *see also Miles, Inc. v. Department of State Revenue*, 659 N.E.2d 1158, 1161 (Ind. Tax Ct.1995).

*State Revenue,* 569 N.E.2d 765, 768 (Ind. Tax Ct.1991), *aff'd,* 587 N.E.2d 1311 (Ind.1992)). Moreover, Courts will not construe a statute in a manner that will render another a nullity. *See Sangralea,* 686 N.E.2d at 958 (citing *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993)). To read section 6–8.1–5–1(g) as completely barring appeals to this Court once 180 days have passed from the issuance of an LOF, would strip this Court of the jurisdiction conferred in section 6–8.1–9–1(c) and would render that section a nullity.

■ Perhaps more importantly, the language included in section 6–8.1–9–1(c) allows an appeal from a claim for refund to be made on the 181st day "whether or not [the taxpayer] protested the tax payment." Therefore, a taxpayer can file a written protest, subsequently pay the tax and file a claim for refund, and not lose the right to appeal from the claim for refund. Indeed, our Supreme Court has made clear that a taxpayer may pursue relief under both procedures at once. *See State v. Sproles,* 672 N.E.2d 1353, 1357 (Ind.1996); *see also Horrall v. Department of State Revenue,* 687 N.E.2d 1219, 1220 n. 2 (Ind. Tax Ct.1997), *review denied.* For this Court to hold otherwise would contradict the language in *Sproles.* Accordingly, this Court concludes that it has jurisdiction to hear the present appeal and turns to the merits of the case.

I.  Whether the Department's failure to issue a letter of findings in a timely manner voids the assessment of gross income tax made by the Department.

Neither party disputes the fact that when a taxpayer files a written protest, the Department is required issue an LOF within sixty days of the completion of a hearing on a taxpayer's protest. IND.CODE ANN. § 6–8.1–5–1(e) (West Supp.1998). City claims that failure to meet this sixty day deadline renders any assessment made by the Department void.

The Department argues that failure to issue a LOF within sixty days does not render the assessment void. Rather, the Department asserts that the intent of the legislature in providing the sixty day limit was to provide "guidance" regarding the appropriate length of time the Department should take to issue a LOF while leaving the statute "flexible enough to account for more complicated or difficult cases." (Resp't Br. at 10). The Department argues that the legislature would have used explicit language if it intended the sixty day limit to be a prerequisite to a valid assessment. (Resp't Br at 10).

■ It is important to note that this Court may not usurp the authority of the legislature by engrafting a remedy onto a statute where none exists. *See State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.,* 702 N.E.2d 701, 705 (Ind. 1998) (citing *Grody v. State,* 257 Ind. 651, 659–60, 278 N.E.2d 280, 285 (1972)). However, this is precisely what City asks this court to do by voiding the assessment made by the Department. Although it is unclear whether the legislature contemplated that there be any consequences for a failure by the Department to issue an LOF within sixty days, it is clear that the legislature did not expressly include any consequences in the applicable statutes. Moreover, the legislature did not expressly link the validity of an LOF, and the associated assessment, to the timely issuance of the LOF.[2]

■ This is not to say that taxpayers are without recourse if the Department fails to act within sixty days. The taxpayer may appeal to this Court if no LOF is issued. *See Sproles,* 672 N.E.2d at 1361 n. 19; *cf. Bielski v. Zorn,* 627 N.E.2d 880, 886 (Ind. Tax Ct.1994). Alternatively, the taxpayer can petition this Court for mandamus to order the Department to act. *Cf. Mixmill,* 702 N.E.2d at 705–706.

■ In this case, City did not receive an LOF until 105 days after the hearing on its written protest. However, City chose not to file an original tax appeal with this Court immediately after the sixty day deadline had

---

**2.** This is not to say that the sixty day time limit is merely "guidance" regarding the time the Department should take to issue a LOF. On the contrary, the language of section 6–8.1–5–1(e) is very clear. Section 6–8.1–5–1(c) expressly states that the Department "shall" issue a LOF within sixty days of the holding of a hearing or the making of a decision when no hearing is held. This is a mandatory provision. No other interpretation is possible.

passed. This is well within City's right to do, but it does not invalidate the subsequent LOF and assessment issued by the Department. Therefore, the assessment of additional gross income tax by the Department is not invalid on this basis.

## II. Whether the bonds are:

a. exempt from gross income tax under their enabling statutes and;

b. are exempt from gross income tax because they have been treated as exempt by the Department for 42 years.

City's next argument is divided into two parts. First, City argues that the enabling statutes that create the bonds exempt those bonds from gross income tax. City argues that the exemption includes income gained from the buying and selling of the bonds for profit.[3] Second, City argues that the Department has treated income gained from the buying and selling of the bonds as exempt for forty-two years. City argues that the Department may not change its long-standing policy without revising its regulations or providing taxpayers notice through an instructional bulletin.

The Department argues that the enabling statutes are silent with regard to income gained from the sale of the bonds and that subsequent statutory enactments clearly render the gain as taxable gross income. The Department further argues that notice of the change in its policy was provided to City, as well as other taxpayers, through the issuance of new regulations. Therefore, the Department argues that the profit made by City is taxable as gross income.

### a. Are the bonds exempt from gross income tax under their enabling statutes?

City first argues that the enabling statutes that create the bonds exempt them from tax. The pertinent enabling statutes read as follows:

[A]ll stock and other securities including the interest or dividends thereon issued by a [school] corporation, shall be exempt from all state, county, and other taxes including gross income tax. IND.CODE ANN. § 21-5-11-14 (West 1995).

[A]ll bonds issued under the authority given [state universities], together with interest thereon, shall be exempt from taxation. IND.CODE ANN. §§ 20-12-7-5, 8-5 (West 1995).

[Sewer] bonds issued under this section are exempt from taxation for all purposes. IND.CODE ANN. § 36-9-23-18(n) (West 1997).

The [sewer] bonds and interest are exempt from taxation for all purposes.... IND. CODE ANN. § 36-9-25-27(c) (West Supp. 1998).

(hereinafter collectively referred to as "enabling statutes")

The Department counters by arguing that although the enabling statutes may appear to grant sweeping tax exemptions to any income derived from the sale of the bonds, the legislature has enacted legislation that limits the type of income that is exempt from taxation. The Department points to the General Exemption Statute (GES) to support its position. This statute provides a tax exemption for governmental bonds and the interest thereon but limits that exemption to "the proceeds received by a holder from the sale of such obligations to the extent of the holder's cost of acquisition...." IND.CODE ANN. § 6-8-5-1. In addition, the Department points to two regulations in support of its position.

The first regulation provides that "the gain from the sale of the securities is taxable with the exception of those nontaxable sales in interstate commerce. This would include receipts from the sale of ... Indiana state and municipal obligations which are taxable to the extent of any profit or gain." IND. ADMIN. CODE tit. 45, r. 1-1-35 (1996). The second regulation provides that the "gain derived from the sale of tax-exempt municipal bonds ... held as investments is taxable for Indiana gross income tax purposes." IND. ADMIN. CODE tit. 45, r. 1-1-127 (1996). The Department argues that these regula-

---

**3.** The court notes that ordinarily the gross income tax is directed at gross receipts, not profit. However, under the General Exemption Statute, only the profit made from the buying and selling of exempt bonds constitutes gross income. *See* IND.CODE ANN. § 6-8-5-1 (West 1989) (amended 1990, 1991, & 1997).

tions, along with the GES, make clear that the gain City derived from the sale of the bonds is taxable. The Department is correct.

▮▮▮ City's argument turns on the supremacy of the enabling statute over the GES. When two statutory provisions are in conflict with one another, the more specific of the two controls. *See Houtchens v. Lane,* 246 Ind. 540, 546, 206 N.E.2d 131, 134 (1965); *Weatherholt v. Spencer County,* 639 N.E.2d 354, 356 (Ind.Ct.App.1994). Moreover, when interpreting statutory provisions, this Court endeavors to determine the intent of the legislature and construes ambiguous statutory provisions in a manner consistent with that intent. *See Sangralea,* 686 N.E.2d at 956; *see also Mechanics Laundry v. Department of State Revenue,* 650 N.E.2d 1223, 1227 (Ind. Tax Ct.1995).

▮▮▮ In the present case, the language of the GES is more specific with respect to the precise manner of determining which portion of income from bonds is taxable. The GES specifically states that income gained from the sale of the bonds, to the extent that gain exceeds the amount the taxpayer initially invested in the bond (i.e., the taxpayer's basis), is taxable. IND.CODE ANN. § 6–8–5–1. The enabling statutes that create the bonds merely state that the bonds are tax exempt. It seems clear that the enabling statutes are simply an attempt by the legislature to create a tax exempt security. It also seems clear that the GES is intended to define the scope of the exemption provided to tax exempt securities. The GES has previously been interpreted by the Supreme Court as limiting the scope of tax exemptions on municipal bonds. *See Department of State Revenue v. Fort Wayne Nat'l Corp.,* 649 N.E.2d 109, 113–14 (Ind.), *cert. denied* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995).

▮▮▮ When discussing tax exemptions, it is important to remember that they are strictly construed against the taxpayer and in favor of taxation. *See Monarch Steel Co. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 809, 811 (Ind. Tax Ct.1998); *Sangralea,* 686 N.E.2d at 956; *Trinity Episcopal Church v. State Bd. of Tax Comm'rs,* 694 N.E.2d 816, 818 (Ind. Tax Ct.1998); *Alte Salems Kirche*

*v. State Bd. of Tax Comm'rs,* 694 N.E.2d 810, 812 (Ind. Tax Ct.1998); *Fort Wayne Natl. Corp.* 649 N.E.2d at 113. Therefore, City must show that the particular statutes in question exempt the gain made on the sale of the bonds from taxation. Although City has provided the Court with some arguments to support its position, the law favors taxation rather than exemption. Merely citing the enabling statutes that create the tax exempt bonds is insufficient to prove that a profit made from the advanced marketing and sale of the bonds is also exempt from taxation. In short, City has not shown that the enabling statutes create an exemption for the gain on the sale of the bonds.

In addition, the Court notes that the income produced from City's sale of the bond is not income generated by the bond itself but rather income generated through the sales tactics and marketing strategies of City. In other words, the profit made by City is not produced from the bond maturing over the normal course of its life but rather from City's marketing scheme. This is not the type of conduct that the legislature contemplated when it created the tax exempt bond statutes. However, this is precisely the conduct the legislature intended to address by enacting the GES.

Finally, it is important to note that taxing the profit that City made on the sale of the bonds will not diminish the benefits intended by the legislature when it created the bonds. The legislature has decided that certain entities, such as schools, should be allowed to raise funds with less expense and greater ease through the process of creating tax exempt bond financing. These entities will still be able to raise funds in the manner intended by the legislature, regardless of whether the gain made from the sale of the bond at a profit is taxed. Therefore, this Court holds that the gain made from the sale of the bonds is not exempt from tax under the enabling statutes.

**b.** Are the bonds exempt from gross income tax because they have been treated as exempt by the Department for forty-two years?

City's next argument is that the bonds have been treated as exempt by the Department for forty-two years and therefore

should be exempt from tax today. In support of its argument, City cites IND.CODE ANN. § 6–2.1–8–3 (West 1989) (repealed 1997), which reads:

> No change in a departmental interpretation of [article 6–2.1, dealing with gross income] may take effect prior to the date a change is promulgated in a rule ... if the change would increase a taxpayer's gross income tax liability.

City points out that in 1952 it litigated a similar issue to the one at bar and was successful in arguing that the gain made from the sale of the bonds was tax exempt. City was subsequently issued a LOF by the Department in 1979 that stated that its gain from the sale of the bonds was exempt from taxation. Moreover, City submitted an affidavit from the former "Administrator of Income Tax" for the Department from 1964 to 1983, Mr. Frank A. Klinkose, Jr., that averred that the Department's policy during his administration was to treat the gain made from the sale of bonds as tax exempt. Therefore, City argues that the Department has regarded the gain from the sale of tax exempt bonds as tax exempt for many years; and to change that interpretation now would increase City's gross income tax liability in violation of section 6–2.1–8–3. Therefore, City claims that the Department may not change its interpretation of the taxability of these tax exempt bonds without first passing a new rule or regulation.

The Department counters by arguing that in 1978 it did pass new regulations that should have informed City of its shift in policy. The first of these regulations requires that tax be paid on the gain from the sale of bonds held for investment purposes.[4] *See* IND. ADMIN. CODE tit. 45, r. 1–1–35. The second regulation notes that gain from the sale of tax exempt municipal bonds held for investment purposes is taxable to the extent that the gain is reported on the Internal Revenue Service's Schedule D.[5] *See* IND. ADMIN. CODE tit. 45, r. 1–1–127. In light of these rules, the Department argues that it complied with the requirements of section 6–2.1–8–3 and that City had ample notice of a change in policy.

■ Although the Department did issue new rules in 1978 through the issuance of IND. ADMIN. CODE tit. 45, r. 1–1–35 and IND. ADMIN. CODE tit. 45, r. 1–1–127, the evidence indicates that the Department continued to allow City an exemption from tax for the gain made from the sale of the bonds. It appears that this treatment continued until *at least* 1983. The Department cannot now be allowed to reach back to its 1978 change in regulations as providing City with notice of a change in policy today. Therefore, this Court will not hold City liable for the tax the Department claims it owes.

*The Court notes that the statutory scheme in effect at all times relevant to City's appeal, requiring that the Department promulgate new regulations if it intends to make a change in policy that will affect a taxpayer's tax liability, has since been repealed.* Moreover, City cannot complain that it does not now have notice of the Department's policy with respect to taxing the gain from the sale of exempt bonds. Therefore, beginning with the first full tax year after the issuance of this opinion, City is considered to have notice of the Department change in policy. If City sells exempt bonds for a profit during that, or any subsequent years, City will be required to pay tax on the gain from the sale of the bonds.[6]

---

**4.** The Court takes this opportunity to point out that City's bonds do not appear to be held for investment purposes but rather could be classified as inventory of City's business as securities dealers. If the bonds constitute inventory, then the rules the Department points to in support of its position are not applicable to City because the bonds are not held for investment purposes. Regardless, neither party briefed or argued this issue. Therefore, the issue will not be discussed.

**5.** Schedule D is a form required to be filed by a taxpayer that has income derived from capital gains and losses. *See* 26 C.F.R. § 601.602 (1998).

**6.** This holding does not consider whether the bonds held by City are inventory nor precisely what qualifies as inventory. This Court has held that City now has notice of the Department's change in policy and the additional regulations. However, this holding does not require that City, or any other taxpayer, pay tax on bonds held as inventory. Perhaps it would behoove the Department to issue regulations defining and discussing the sale of bonds held as inventory if it wishes to alter its policy with respect to these items. Regardless, City does not owe tax on the bonds it held during the tax years in question.

## CONCLUSION

Based on the foregoing, this Court grants City's motion for summary judgment and denies the Department's motion for summary judgment.